SEABOARD ALL-FLORIDA RAILWAY, *Appellant*, vs. FLORABEL LEVITT, joined by her husband and next friend, H. A. LEAVITT, *Appellees*.

141 So. 886.

En Banc.

Opinion filed May 31, 1932.

*Farmer & Grantham,* for Appellant;
*Dillon, Ferguson & Wells,* for Appellees.

BROWN, J.—This is an appeal from orders made in the course of a foreclosure proceeding in the Circuit Court of Broward County. In August, 1925, William V. Tongeln

executed and delivered a mortgage to Florabel Leavitt covering a tract of land in Broward County comprising twenty acres, to secure the payment of three promissory notes respectively payable one, two and three years from date, aggregating $22,500.00, which mortgage was duly recorded within a few days after its execution. About seven months later, in March, 1926, the Seaboard All-Florida Railway, appellant here, instituted condemnation proceedings in the Circuit Court of Broward County to acquire a strip of land 100 feet wide, containing 1½ acres, for right of way purposes, through and over the land described in said mortgage, making Tongeln, as owner, and Florabel Leavitt, as mortgagee, parties defendant. The petition was filed under sections 5084-5086 C. G. L. Section 5087 C. G. L. provides that:

"When the petition is filed the clerk shall issue a notice or notices directed to the sheriff or sheriffs of the county or counties wherein the defendants or any of them reside, commanding him or them that he or they may make known to the defendants that they be and appear in the same circuit court on a day named in said notice not less than thirty days from the date thereof, to show what interest they have in the property and to show cause why it should not be taken for the uses and purposes set forth in the petition, which notice shall be served by the proper sheriffs in the same manner as writs of summons are served not less than ten days before the return day of such notice or notices. Alias and pluries notices may be issued as in other cases, returnable, however, in the manner aforesaid."

This section further provides that after issuing the notice above provided for, the clerk shall in every case forthwill publish in some newspaper published in the county, once a week, for four consecutive weeks, a notice directed to all persons interested in or having liens upon the property, in the same terms as the above notice, to appear and show cause or else be barred, and that the

clerk shall file a certificate of such publication of record in the cause. This publication of notice, however, does not dispense with the necessity of compliance with the service of a proper notice upon the named resident defendants whose places of residence are known, and who are accessible to service, as required by the above quoted provision of the statute. Tibbetts v. Olsen, 91 Fla. 824, 108 So. 679.

The petition as filed appears to have complied with the statute and the clerk issued a notice captioned as follows: "Seaboard All-Florida Railway, Plaintiff, v. William V. Tongeln and Florabel Leavitt, Defendants." However, the name of Florabel Leavitt was omitted from the notice. The notice was directed to the Sheriff of Dade County, and the body of it read as follows:

"You are hereby commanded to make known to William V. Tongeln, Defendant in the above entitled cause, that he be and appear in the Circuit Court in and for Broward County, Florida, on Monday, May 3, A. D. 1926, to show what interest he may have in and to the following described property, to-wit: (describing the property) and to show cause if any he can, why the said property should not be taken for uses and purposes, to-wit: for a right-of-way by the plaintiff as alleged in its petition filed in said Circuit Court in and for Broward County, Florida." The notice was properly tested in the name of the Circuit Judge and signed by the clerk of the Circuit Court for Broward County.

Both defendants were residents of Dade County, and the foregoing notice was sent to the sheriff of Dade County and he returned the same into court with the following entry, signed by the sheriff, thereon: "Received this notice March 25, 1926, and served the same March 25, 1926, by delivering true coies thereof to Flora Bell Leavitt and William Tonglin, within named defend-

ants, and at the same time showing this original and explaining the contents thereof."

In due time the clerk also published notice as required by the statute.

The defendant, William V. Tongeln, appeared in response to the above quoted notice: the defendant, Florabel Leavitt, did not. A trial was had and the jury returned a verdict in which it was found that the defendants, naming both of them, were entitled to receive and were awarded compensation for the described property in the sum of $2500.00 and $250.00 as reasonable attorney's fees and that the defendant, William V. Tongeln, was entitled to receive as his proper share of the aforesaid compensation the sum of $2500.00 and the defendant Florabel Leavitt was entitled to and that she receive nothing. Thereupon the court rendered judgment in accordance with the verdict. These monies were paid into court by appellant as required by the statute and in due course were paid out to the defendant, Tongeln and his attorney. The petitioner went into possession of the strip of land, constructed its railway thereover, and occupied the same for railroad purposes.

Subsequently, in June, 1927, Florabel Leavitt, joined by her husband and next friend, H. A. Leavitt, filed her bill to foreclose the mortgage she held against William V. Tongeln, making appellant, Seaboard All-Florida Railway also a party defendant. The defendant railway company set up the condemnation proceedings as a defense, so far as it was concerned, as to that portion of the property which had been awarded to it in said condemnation proceedings. The complainants replied that the condemnation proceedings were void and of no effect as against Florabel Leavitt, because the summons did not command the sheriff of Dade County that he make known to said Florabel Leavitt that she be and appear

in the said Circuit Court on the day named in said notice, to show cause, etc., and hence that the court never acquired jurisdiction.

The case was referred to a special master for findings on both law and fact, and a certified copy of the condemnation proceedings was offered in evidence. The master found that the notice served by the sheriff on Florabel Leavitt was void. Exceptions were filed by the defendant railway company which were overruled by the court. The court rendered a final decree ascertaining the mortgage indebtedness to be something over $27,000.00 and ordered a sale of all the property except the strip of land covered by the condemnation proceedings, as to which the court retained jurisdiction to adjudicate the right, interest and claims as between the complainant Florabel Leavitt and the Seaboard All-Florida Railway and to enter in connection therewith all such future orders and decrees as should be found meet and proper. The land, less this right-of-way strip, was sold under the decree and bought in by the complainant for $2000.00. On September 4, 1928, a supplemental final decree was rendered finding the equities with the complainant in the mortgage foreclosure and ordering the right-of-way strip sold to satisfy the balance due on the mortgage debt, which was ascertained to be $25,963.95. The defendant Railway Company filed a motion for a rehearing as to this supplemental final decree, which motion was granted by an order dated December 21, 1928, in which the court stated that while the court was of the opinion that the equity of the cause was with the complainant and against the defendant Railroad Corporation, but being of the opinion that the nature of the relief afforded to the complainant by the supplemental decree should be other and different, the court would enter a modified and amended supplemental decree upon application therefor by the complainants upon five days'

notice to the defendant Railway Company. Subsequently a motion for the entry of supplemental final decree was filed by counsel for the complainants, and on March 12, 1929, the chancellor entered an order referring the matter to a special master and directing him to ascertain the date of the appropriation by the defendant of the strip of land involved and to ascertain the fair and reasonable market value of said land at the time of appropriation thereof by the defendant railway company, and to report his findings on such question together with a transcript of the proceedings. From said orders entered by the Chancellor on December 21, 1928, and March 12, 1929, this appeal was taken by the defendant Seaboard All-Florida Railway.

In connection with the order of March 12, 1929, the chancellor, Circuit Judge Giblin, filed an able opinion discussing the questions involved, in which opinion he reached the conclusion that complainant was not entitled to a foreclosure as against the strip of land in the possession of the railway company for the entire balance due on the mortgage debt, nor should the defendant company be required, in order to effect a release of the said right-of-way strip from the lien of the complainant's mortgage, to pay such unpaid balance of the mortgage debt, but that the defendant Railway Company should be required to satisfy the deficiency up to the amount of the value of the appropriated strip, with interest, estimated as of the time of the appropriation thereof by the railway company, unless, of course, such value should exceed the amount of the deficiency. It was upon this theory that the order was made directing the special master to estimate by appropriate proceedings the value of such strip of land as of the date of its appropriation by the railway company.

In 10 R. C. L. 140-141, the following appears:

"It is a general and well established rule that, when mortgaged property is taken by eminent domain, or damaged to such an extent that the security of the mortgage is impaired, the mortgagee's rights against the land follow the award, and he may have the mortgage debt satisfied out of that fund in advance of other creditors of the mortgagor, if he takes the burden upon himself of enforcing his rights in that regard. Whether the mortgagee's interest is property in the constitutional sense, so that the condemning party is bound at its peril to see that the mortgagee is compensated and he has his remedy directly against the condemning party, is a question upon which the decisions are not in agreement. In those states in which the common law doctrine prevails, and the mortgagee is held to be the possessor of a defeasible title to the land, his interest is entitled to the same constitutional protection as any other property; but in states in which the mortgage is held to be a mere security creating a lien upon the property, but vesting no estate in the mortgagee, it is generally held that the mortgagee has no property in the mortgaged land and has no constitutional right to protection. On the ground that the lien of the mortgage is a property right, it has been held that, even where a mortgage is only a lien, the mortgagee may recover compensation directly from the condemning party, although the mortgagor has already been paid the full value of the land; but, in the absence of statute requiring notice to the mortgagee, the weight of authority is otherwise. A lien is not an estate or interest in the land, but a remedy against it, and consequently a lien holder is not constitutionally entitled to compensation when the property subject to the lien is taken by eminent domain."

See also 20 C. J. 856, 1221; Lewis Em. Dom. 3rd Ed. Sections 523 & 896; 4 Anno. Cas. 944; 58 A. L. R. 1534 et seq.

While in this State it is held that a mortgage does not convey the legal title or right of possession, but merely constitutes a specific lien on the property therein describ-

ed (Section 5725 C. G. L.), such lien is itself a species of intangible property, of which the holder cannot be deprived without due process, for under it the actual property may be subjected to the lien and sold to satisfy the debt secured thereby. See Ganay v. Lederer, 250 U. S. 376, 63 L. ed. 1042; Milam v. Davis, 97 Fla. 916, 123 So. 668; 37 C. J. 311. Whether the interest of a mortgagee is such as to bring it within the operation of the constitutional provision that private property shall not be appropriated to public use unless just compensation therefor shall first be made, it is not necessary for us here to decide, because the mortgagee's interest is fully protected by the statutory procedure under which the railway company sought to condemn and appropriate a portion of the land covered by appellee's mortgage. Section 5084 C. G. L. requires the petition for condemnation to set forth the names, residence and interest of "all owners and mortgagees" if the same can by diligent search be ascertained, and Section 5085 provides that "No judgment creditor or other lienor (except mortgagees as aforesaid) need be made parties defendant by the petitioner." Section 5089 provides that a jury shall be empanelled to try "what compensation shall be made to the defendant." Notice, to be served by the proper sheriff, to a defendant mortgagee is required, as above shown, the same as to a defendant owner, and such notice must command the defendants "that they be and appear," etc. The notice served upon the mortgagee in this case did not command her to appear; it only commanded the defendant owner to appear. The mortgagee was not served with such a notice as the statute required. Nor did she waive the defect in process by appearance. Personal jurisdiction of the mortgagee in the condemnation proceeding was never acquired by the court, and its judgment was therefore not binding upon her. While the judgment of condemnation

may have justified the appropriation of the interest in the land owned by Wm. V. Tongeln, it did not take away the mortgagee's rights.

In F. C. & P. R. Co. v. Bear, 43 Fla. 319, 31 So. 287; Spafford v. Brevard County, 92 Fla. 617, 623, 110 So. 451; and in Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527, is was held that proceedings for condemnation of property under the power of eminent domain are governed and controlled by the statutes authorizing them, and that these statutes must be "strictly construed and substantially complied with in all proceedings instituted thereunder." This is in accord with the weight of authority. Lewis Em. Dom. Sec. 570. And we have also held that, in the absence of personal appearance by the owner, the notice prescribed by the statute to be given to such owner is jurisdictional and cannot be disregarded, and it not appearing from the record in that case that the required notice was given, and there being no recital in the record that the judge had adjudicated that fact, nor any recital from which it could be inferred that proper notice had been given, the judgment in condemnation was held ineffectual as against the owner, and it was further held that as there was no foundation in that case for the application of the doctrine of estoppel, such owner could maintain ejectment. F. T. & K. W. Ry. Co. v. Adams, 27 Fla. 443, 9 So. 2. "Where the character of the notice and the matters to be included are prescribed by statute the provision must be complied with, but mere irregularities, not affecting any substantial right of the parties, will not vitiate the notice." 20 C. J. 934. See also 10 R. C. L. 210, and 34 C. J. 532, et seq.

We are not unmindful of the rule that where a court of general jurisdiction has acted within the scope of its general powers, it will be presumed upon collateral attack that it had jurisdiction of the subject matter of the action

and of the parties thereto, unless the contrary appears of record. Fiehe v. R. E. Householder Co., 98 Fla. 627, 125 So. 2. But here the substantial flaw in the notice does appear of record. It is true that the notice as written and served may have given the mortgagee knowledge that a condemnation proceeding had been begun against a portion of the property embraced in her mortgage, and that she was named in the caption as one of the parties defendant, but the notice did not, as required by the statute, command her to appear and defend the suit; it was strictly limited in this respect to Tongeln, the owner. This was a material and substantial departure from the statutory requirement, affirmatively appearing of record, and not waived. See in this connection Saddler v. Smith, 54 Fla. 671, 45 So. 718; Calumet River R. Co. v. Brown, (Ill.) 12 L. R. A. 84; Sleeper v. Killion, (Ia.) 147 N. W. 314; Steele v. Murray, 80 Ia. 336, 45 N. W. 1030; In re estate of Anderson, 125 Ia. 670, 101 N. W. 510; State v. Montegudo, 48 La. Ann. 1417, 20 So. 11; John Holland G. P. Co. v. Williams, 7 Ga. App. 173, 66 S. E. 540.

Appellant has very forcibly argued in a strong brief that as this condemnation proceeding was *in rem*, the judgment was binding on appellee in spite of the flaw in the notice; that in such cases it is enough, on collateral attack, if the statute requires such notice as makes it reasonably certain that all persons interested who easily can be reached will have information of the proceedings, and that there is such probability as reasonably can be provided for that those at a distance will be informed, citing Appleton v. City of Newton (Mass.) 59 N. E. 648 and Huling v. Kaw Valley Ry. & Imp. Co., 130 U. S. 559, 32 Law. ed. 1045; that where a person has actual notice that some proceeding is to be had, at a designated time and place, which may affect his interest, and he fails to appear and object to the notice or its service, he cannot assail in a collateral pro-

ceeding rights acquired in good faith on the supposition that the service was regular; citing Pomeroy Eq. Juris., 4th ed. Sec. 594; Thompson v. Chicago S. F. & C. Ry. Co. (Mo.) 19 S. W. 77, and cases cited; also Point Pleasant v. Greenlee & Hurden (W. Va.) 129 Am. S. Rep. 976; Jackson v. Dyer (Ind.) 3 N. E. 863; Moore Realty Co. v. Carr, 61 Ore. 34, 120 Pac. 742, and other cases; also 23 Cyc. 1075 and 25 Cyc. 995; but for the reasons above given, in this, a special statutory proceeding, we must adhere to the holding hereinabove set forth. We realize that the courts have been quite liberal in sustaining the constitutional validity of condemnation statutes in so far as the form and manner of giving notice to interested parties is concerned, but the weight of authority appears to uphold the view, to which this court has long been committed, that the requirements of the statute in this regard, whatever they may be, if they be constitutional, they must be *substantially* complied with. Of course, mere immaterial irregularities or informalities which do not affect the substantial rights of the parties will not invalidate the judgment. But the tremendous power of eminent domain, while frequently necessary to be resorted to for the promotion of needful public purposes, is a power which can be abused unless properly safeguarded. We have two constitutional restrictions upon the exercise of this power (Section 12 of Declaration of Rights and Section 29 of Art. XVI) in addition to the statutory requirements above referred to. These considerations justify the previous holdings of this court that the statutory procedure must be substantially complied with. The general principle which seems to obtain in most jurisdictions in ordinary actions at law *in personam* is very well stated by Powell, J., in John Holland Co. v. Williams, 7 Ga. App. 174, as follows: "To bind a party by the judgment in a suit, irrespective of what other portions of the record may show, it must appear

that he has been served with process directed to him, or else that he has by some express or implied waiver, dispensed with the necessity of process.'' This is also such a defect as may be taken advantage of in collateral attack on a judgment in condemnation proceedings, where the statute requires service of such a notice as our statute provides. See 2 Lewis on Eminent Domain (3rd ed.) p. 1016, Sec. 590, which reads as follows:

> "When notice is required by Statute, it must be given in strict conformity to the statute. As already observed, the legislature may refuse to exercise or delegate the power, and it can accordingly annex such conditions to its exercise as it sees fit. These conditions must be strictly complied with, or no valid appropriation can be effected. A failure, therefore, to give the notice required, is a fatal error, which, if not waived by an appearance or otherwise, may not only be taken advantage of at any stage of the proceedings to arrest or set them aside, but also renders the proceedings absolutely void, even when called in question collaterally.''

We hold therefore that the chancellor was correct in holding that the notice was not legally sufficient to bring in Florabel Leavitt as a party defendant to the condemnation proceedings, and her lien on the land was not affected thereby. 4 Anno. Cas. 946, citing a number of decisions: Lewis Em Dom. (3rd ed.) Sections 566, 578, 581, 586, 865-867.

For these reasons the judgment in the condemnation proceedings did not destroy or displace the mortgage lien, nor did it confine the mortgagee to the usual remedy of subjecting the award to such lien. While it is a rule quite generally accepted by the courts that the award takes the place of the land and that a mortgagee of property taken under condemnation proceedings has a right to the award therefor superior to the right of the mortgagor, and is entitled to have the sum awarded applied to the mortgage

debt (4 Anno. Cas. 944), in this case the mortgagee was not given the notice required by the statute and did not appear, and in her absence the court adjudged that she should receive nothing and that the entire award should be paid to the owner-defendant, which was done. Under such circumstances, it has been held in a number of jurisdictions that the mortgagee can compel the condemnor to a second payment to himself (4 Anno. Cas. 947); while in Bennett v. Minneapolis, etc., R. Co., 42 Minn. 245, it was held that if the mortgagee was not made a party, there could have been no binding adjudication in the eminent domain proceeding as to any rights he may have had respecting the money awarded as damages. In a few jurisdictions, where the mortgagee is held not to be a necessary party, he is left to his legal remedy against the mortgagor, or he may go into a court of equity, follow the award, and have it applied to the mortgage debt. 58 A. L. R. 1546. In those jurisdictions where the mortgagee is a necessary party to the condemnation proceeding, the rule seems to be that, where the mortgaged land is taken or damaged, the mortgagee is entitled either to the whole of the award made, or to a share thereof to the extent of his interest or damage. Thus where the whole of the mortgaged land is taken in the proceedings, the mortgagee is entitled to the entire award, or at least so much thereof as is necessary to satisfy the mortgage debt. But where only a part of the mortgaged property is taken, the mortgagee is entitled to only so much of the award as is necessary to compensate him for his interest in the part taken. 58 A. L. R. 1534-1539, where numerous cases are cited.

While the mortgage lien here involved was not displaced or destroyed by the condemnation proceeding, and the mortgagee was not confined to enforcing her lien against the award, our conclusion is that under the cir-

cumstances of this case the mortgagee is only entitled to compensation from the railway company to the extent of the impairment of the security afforded by the lien by reason of the appropriation by the railway company of that portion of the mortgaged property comprised within the right-of-way strip, as of the date of such appropriation, as decided below. It is contended that the damage should be ascertained as of the date of foreclosure, as it was not until then that the mortgagee effected a resort, for the collection of the debt, to the security afforded by the land covered by her mortgage. But while the question is not without difficulty, we are not clearly convinced that the chancellor was in error in this regard. Nor was the chancellor in error in declining to foreclose the mortgage as against this 1½ acres appropriated by the railway company, and in decreeing that jurisdiction would be retained to afford some other and different relief.

Although the mortgagee was not properly brought in as a party to the condemnation proceedings, the notice not being directed to her as above shown, yet the defective notice which was served upon her was sufficient to give her information that condemnation proceedings had been commenced against the strip of land 100 feet wide running through the twenty-acre tract on which she held a mortgage and that the mortgagor was commanded to appear and defend. With this information in her possession she allowed matters to run their course; allowed the railway company to pay the owner-mortgagor $2500.00 for the then full value of the right-of-way as ascertained by the jury, and allowed it to go to the expense of constructing its railroad thereon, all without objection on her part. Under the principles enunciated in Pensacola & Atlantic R. Co. v. Jackson, 21 Fla. 146, although the facts in that case were different in some respects from those here involved, we are of the opinion that appellee was estopped

from foreclosing her mortgage on this right-of-way land. In the Jackson case it was held that:

"Where with the full knowledge and in the presence of the owner of land a chartered railroad company wrongfully or without lawful right enters upon and takes possession, destroying the fenses and superstructures thereon, and builds a line of railroad and runs its cars over it, the owner making no objection other than that the amount of damages offered by the company is not satisfactory, and the owner of the land lies by for over nine months without attempting to prevent the taking possession and occupation by the company, a court of equity will not enjoin the company from continuing to run its cars over the road. The conduct of the owner amounts to an acquiescence in the construction of the road over his land, and the public have acquired rights upon such acquiescence which will not be interfered with by a court of equity by injunction."

"Yet the owner has not lost his title to the land and may maintain an appropriate action at law to recover his damages."

In this case it is not a question per se of damages to the land, but of damages for impairment of the mortgage lien or security, which affords grounds for a law action on the case for damages, (11 C. J. 9) or in some circumstances, as where there is no right in the lienor to immediate possession, grounds for a suit in equity. 37 C. J. 340, 342.

It is quite possible that at the time of the appropriation, the land covered by the mortgage was worth more than the mortgage debt, to such an extent that the security was not *then* impaired by such appropriation of the right-of-way strip. However, in any event, the remedy of the mortgagee should be confined to the amount of damages to her security, the amount of the impairment of the value of her lien, which she has actually suffered by reason of the appropriation complained of. There are some cases which go so far as to hold that, however great the damage to the

land, the mortgagee cannot succeed unless he shows that the remainder of the mortgage security and the personal responsibility of the mortgagor are insufficient to afford him complete indemnity. See Knoll v. R. R., (Pa.) 1 L. R. A. 366.

In view of the retention by the chancellor of jurisdiction for the purpose of affording relief of a nature different from that of foreclosure, as to that portion of the land embraced in the mortgage sought to be foreclosed which was appropriated by the Railway Company, we think relief of the sort above outlined can be granted under the prayer for general relief contained in the bill for foreclosure.

While the scope of the questions submitted to the special master by the order of March 12, 1929, is rather narrow, we find no error in such order as far as it goes. Finding no reversible error in the record, the orders appealed from will be affirmed, and the cause remanded for further proceedings consistent with this opinion.

Affirmed and remanded for further proceedings.

BUFORD, C.J., AND WHITFIELD, TERRELL AND DAVIS, J.J., concur.

ELLIS, J., dissents.