THOMAS, Justice
(dissenting).
The appellees instituted a condemnation proceeding naming as defendants the title holders of the seven tracts of land involved, and appellant, holder of a mortgage on each tract.
In order to simplify the points in controversy I shall confine my observations to the effect of the action upon one of these mortgages which is typical of all. It secured a note providing for the payment monthly of a stated amount to be applied first, to accrued interest, and secondly,, to principal. The note contained a stipulation that additional amounts could, be paid in advance without penalty on any instalment date, but not more than 25 per cent (25%) of the original debt could be discharged in any loan year and anticipation of “any * * * additional principal amounts [should] not decrease the instalments maturing thereafter.”
A part of the answer of appellant, stricken upon motion of the appellees, set out fully the appellant’s duties and mode of operation in loaning the trust funds and contained the challenge that the court had no power to abrogate or impair the terms of the contract between the mortgagee, appellant, and the property owner, and that any effort to that end would constitute a violation of the rights vouchsafed to appellant by both constitutions. I think too much of the answer was eliminated because appellant was privileged to present the nature of the transaction with the borrower; and I conclude that that part constituting The challenge could have been eliminated' as a strict question- of law. But my difficulty arises from the conviction that although the court had the power, as I hope presently to make clear, this power had not when the trial ended, been exercised to the full.
- This leads, to a study of the statutes governing proceedings in :eminent domain. I find that the petition, after describing the property involved, and estate sought, must set forth the “interests in the 'said property of all owners, mortgagees, judgment creditors and lien holders * * (Italics supplied.) So at this point it appears that mortgagees are in the precise .category of owners so far as their status as defendants is concerned. Sec. 73.01, Florida Statutes 1951, ancl F.S.A.
Parenthetically, the trustee of any interest or lien shall be made a party without joining the cestui que trust. Sec. 73.02, Florida Statutes 1951, and F.S.A.
The trial culminates in a verdict which must contain (1) “an accurate description of the property taken;” (2) “thé compensation to be made therefor * * (3) “the amount of such compensation to which each owner is entitled, if sufficient, facts are before the court to, adjudicate the distribution of the proceeds.” (Italics supplied.) Sec. 73.11, Florida Statutes 1951, and F.S.A.
Until now I discover no distinction between the dignity or importance of the interest of the .title holder and the mortgage holder. True the word “owner” is used but it is doubtful that, as áppellant insists, the designation carries the narrow connotation of ownership of title as distinguished from ownership of some other property interest because if such were the case these necessary parties defendant would become ignored while the trial ■ progressed and would have been made parties for the sole purpose of putting them in the position of participating in the distribution of funds after all issues had been adjudicated.
The judgment, founded on the verdict, must, according to the rpandate in the act, *318 Sec. 73.12, Florida Statutes 1951, and F.S.A., incorporate the verdict. Then the property is appropriated to the petitioner upon paying or securing the compensation set by- the jury.
When judgment Í9 entered and the award is paid or secured the property sought is the petitioner’s, the fund is the court’s for distribution. At this late date, “upon appropriate petition * * * the rights of any mortgages [sic], judgment creditors and lien holders in respect to the compensation awarded to each owner by the verdict” are determined. Claimants, in the capacities stated, to proceeds on hand have the opportunity then to present their demands and receive the amounts due 'them. Such procedure in a vast majority of cases would probably be a practical and sufficient means of distributing an award. Especially is this so where a claim is due and the amount is a matter of simple mathematical computation, arid even where a mortgage is not due but the instrument contains a provision that the debt may be discharged before maturity by payment of a specified premium.
But the problem now confronting us is much more serious for a trustee is protesting against interference with an existing contract that not only contains no provision for discharge of the total unpaid balance of principal before maturity but, on the contrary, specifically precludes it. So it is not a matter of mere mechanics, but of constitutional inhibitions.
It seems to me from the whole argument that we should compare and first consider the relevant guaranties of the Federal Constitution, namely, the portions of the Fifth Amendment that "No person shall * * * be deprived of * * * property, without due process of law;” no “private property [shall] be taken for public use, without just compensation,” the part of the Fourteenth Amendment that “No State * * * shall * * * deprive any person of * * * property, without due process of law;” and the provision of Article I, Section 10, that “No State shall * * * pass any * * * -Law impairing the Obligation of Contracts * *
Second, we should place these provisions in juxtaposition with the corresponding ones in the Constitution of Florida, F.S.A., “No person shall be * * * deprived of * * * property without due process of law;” no “private property [shall] be taken without just compensation,” Declaration of Rights, Section 12, and no law “impairing the obligation of contracts, shall ever be passed.” Declaration of Rights, Section 17.
Obviously, it was the purpose of the Legislature in implementing the organic law with reference to the expropriation of private property for public use, where ’the petitioner sought the fee simple title, to secure to the petitioner all interest whatever in the land in exchange for which just compensation was assured to all holders of interests in the land regardless of their character or extent.
It seems to me that to say less would amount to running a-foul of the safeguards in both Constitutions in respect of “just” payment for what the one relinquished and the other received.
I am convinced that the reference in the statute to “owner” does not connote ownership of the fee simple title to the exclusion of the mortgagee’s interest. As is demonstrated in this very case the holder of such an interest, and a trustee at that, presented at the outset of the litigation potent reasons why his outstanding contract with his lendee should not be disturbed. The issues were processed in the formal trial, resulting in a verdict of twelve men disposing of the interest of the title holder. After the adverse ruling on the motion to strike the case was submitted on a stipulation that petitioners could condemn and should take “full title”; that compensation should be the amount stated; and that certain fees and costs should be paid. But the stipulation did not counteract the allegations in appellánt’s pleading because the right of appeal was reserved notwithstanding the stipulation and in this appeal appellant assigned as error the ruling on the *319 motion. So the interest of the appellant was not adjudicated in the trial before the jury, though, of course, he did avail himself of the privilege of petitioning the judge for an allotment of the proceeds. It was there that the serious constitutional questions were eventually decided.
I hasten to say here that I find no fault with the manner in which the trial judge attempted to track the statute even though I may disagree with his ultimate decision. There is met in this court, head-on, the question whether compliance with the apparent design of the statute in the circumstances recorded, results in a collision with Constitutional proscriptions.
I am not reluctant to agree that the mortgagee’s interest may be condemned and taken the same as the title owner’s interest may be condemned and taken for certainly the former’s cannot be of more dignity than the latter’s. But I-am concerned with expropriating one in the very formal manner contemplated both in the constitutions and implemental legislation while relegating the other to the simple post-trial procedure delineated in Chapter 73, supra.
This concern is intensified because of a solemn obligation to be wary of all the provisions of state and Federal constitutions to which I have alluded and which have been brought into play by the salient facts. Clearly the appellant has an outstanding contract which will be impaired because -his mortgage is not due and will not mature for a considerable period. The question, then, is whether the mortgage is not now worth more than the unpaid principal and the interest on it to the date of distribution.
If the guaranties insuring due process and prohibiting impairment are read and applied together, as they must be, and if equal consideration be indulged the provi-, sions for eminent domain, it seems to me that the safeguard against impairment can only be neutralized by a jury verdict assaying the present value of the mortgage indebtedness, or in other words taking the appellant’s property by due process, in the same manner the property of the holder of the legal title is taken. Solely in that way can just compensation of the mortgage holder’s property interest be determined.
I have explored the suggestions of pré-serving the contract while delivering the physical property to the condemner, and of requiring the court to reinvest the amount due the mortgagee to insure the earning of the interest called for in the note. All these have lead me into cul de sacs of impracticality.
I quite agree with the appellant that his lien is transferred to the ultimate award but I cannot accept his view that thereafter the mortgage continues in effect instead of being liquidated at its then value. The arrangement he suggests would be unfeasible because the fund then out of use would either be slowly depleted by interest payments or, at best, if invested by the court in" securities and there was no loss, the earned interest would be reduced by the amount of the cost of handling the fund. There is no reason to believe that the court would be more able than the appellant to make a wise investment of the money. On the other hand if the discount value is properly determined, which should be comparatively simple as testimony should be readily obtainable from experts in the investment field establishing the true value, the appellant would be fully compensated for his property rights.
We have held that a mortgage lien is “a species of intangible property, of which the holder cannot be deprived without due process * * Seaboard All-Florida Railway v. Leavitt, 105 Fla. 600, 141 So. 886, 889.
I cannot conclude that the formal proceedings in eminent domain must be followed to obtain the property of a title holder but need not be followed to dispose of the property rights in an executory contract such as we are studying.
When the judge entertained the petition for determination of the appellant’s rights subsequent to the judgment, under Sec. 73.12, supra, an order was entered making available to appellant “two alternative courses.” He could accept the principal *320 and interest to date of distribution, or lie cquld release- his liens against the award permitting the, owner of the legal title to take all of it leaving the mortgagee to “look solely to the respective mortgagors personally, unsecured by the condemned property or by. the award moneys” for future instalments as they fell due.
In my opinion both of these propositions amounted to impairment of the contract and being imposed as they were, without the sanction of the jury, constituted deprivation without due process.
To repeat, I think the quandary results from the narrow definition of “owner”’ which has been adopted and used through the years as meaning the one holding the legal title to the exclusion of the holders of other interests, although all of them are required to be named in the petition. It would not be difficult for the jury while finding “the amount * * . * to which each owner is entitled,” to fix the value of a mortgagee’s interest, as well as the worth of the legal title.