VAN NORTWICK, J.
The City of Panama City appeals a final judgment of foreclosure in favor of appel-lee, Kelly M. Head, arguing that the trial court erred in determining that the City’s assessment lien on the subject property was inferior to the first mortgage held by Head. Section 18-3 of the Panama City Municipal Code, pursuant to which the City acted, requires notice to be provided to a mortgagee prior to the abatement of any nuisance and subsequent assessment of a lien therefor if the nuisance involves an unfit or unsafe structure, but, for a nuisance not involving an unsafe or unfit structure, notice must only be served upon the record owner and any occupant of the premises, other than the owner. The trial judge ruled that section 18-3 violated the equal protection clauses of the federal and state constitutions because it treated mortgagees differently based on whether the nuisance involved an unfit or unsafe structure, a distinction which the trial court concluded had no rational basis, and that the City had failed to provide sufficient notice to Head prior to assessing the hen. For the reasons that follow, we reverse and remand for further proceedings.

Background

In January 1996, Head sold the subject property located in Bay County, Florida, *1267 to Howard Charles Jacques, III, for a purchase price of $7,500. The purchase price was paid in part by cash and in part by a purchase money promissory note and a mortgage executed by Jacques in the face amount of $6,300.
In May 1996, the City determined that there was an accumulation of debris on the Jacques’ property which constituted a nuisance in violation of the City’s municipal code. Jacques was notified of the determination that a nuisance existed, and, when he failed to abate the nuisance within 30 days, the City abated the nuisance by removing the debris from the property. The City’s assessment lien in the amount of $3,783.52, bearing interest at the rate of 10% per annum, was recorded on August 19, 1996. The City did not give notice to Head of the determination of a nuisance, the requirement to abate the nuisance, or the assessment of the lien against the property.
Section 18-3 of the Panama City Municipal Code provides, in pertinent part, as follows:
(b) When the inspector verifies the existence of a nuisance involving an unfit or unsafe structure, it shall be his duty to promptly prepare and submit to the city manager the notice and order required by this article. The city manager, with the assistance of the city attorney, shall determine the owner of record of the real estate upon which the nuisance is located and send a notice and order of condemnation to such party. In addition, notice shall be given to the lessee or occupants, if any, and persons of record interest, including mortgagee, contract purchaser, agent with power of attorney, person claiming an interest under lis pendens and the like.
(c) Where the inspector verifies the existence of a nuisance not involving an unsafe or unfit structure, the inspector shall serve the notice and order upon the record owner of the premises reflected by the latest tax rolls and upon any occupant of the premises, other than the owner.
On April 12, 1999, Head filed a complaint seeking to foreclose his first mortgage on the subject property and to extinguish the Chy’s assessment lien. Relying upon Gailey v. Robertson, 98 Fla. 176, 123 So. 692 (1929) and Gleason v. Dade County, 174 So.2d 466 (Fla. 3d DCA 1965), the City argued that its lien took priority over Head’s previously recorded first mortgage. While Head did not contest the priority of the City’s assessment liens in general, Head contended that the City’s assessment lien was invalid on constitutional grounds, since Head had not been given notice of the nuisance, the subsequent abatement, or the assessment of the lien. The trial court agreed.
On appeal, Head urges us to affirm, arguing that section 18-3 of the code is unconstitutional because it denies Head equal protection of the laws contrary to Article I, section 2 of the Florida Constitution and the Fourteenth Amendment of the United States Constitution, and it violates the due process clauses of Article I, section 9 of the Florida Constitution and the Fourteenth Amendment of the United States Constitution.

Constitutionally Protected Property Interest

We begin our constitutional analysis by recognizing that a mortgage is a constitutionally protected property interest. See Zipperer v. City of Ft. Myers, 41 F.3d 619, 623 (11th Cir.1995), relying upon Sarasota County v. Andrews, 573 So.2d 113 (Fla. 2d DCA 1991) and Mailman Dev. Corp. v. Segall, 403 So.2d 1137, 1137 (Fla. 4th DCA 1981). As the Zipperer court recognized:
*1268 Florida law gives a mortgagee the right to foreclose and reforeclose its hens. Fla. Stat. § 697.01 (1993). Therefore, a mortgage is a cause of action creating a lien on property. See United of Florida, Inc. v. Illini Fed. Savings & Loan Assoc., 341 So.2d 793, 794 (Fla. 2d DCA 1977). The Supreme Court has specifically held that “a cause of action is a species of property protected by the Fourteenth Amendment’s Due Process Clause.” Logan v. Zimmerman Brush Co., 455 U.S. 422, 428, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982). See Tulsa Professional Collection Servs. v. Pope, 485 U.S. 478, 485-86, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988).
Zipperer, 41 F.3d at 623.

Equal Protection

Because section 18-3 of the Panama City Municipal Code does not abridge a fundamental right nor affect a suspect class, this court must analyze it for purposes of constitutional equal protection scrutiny under a rational basis standard. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 440-41, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). As the Florida Supreme Court stated in Palm Harbor Special Fire Control Dist. v. Kelly, 516 So.2d 249, 251 (Fla.1987):
It is well settled under federal and Florida law that all similarly situated persons are equal before the law. Moreover, without exception, all statutory classifications that treat one person or group differently than others must appear to be based at a minimum on a rational distinction having a just and reasonable relation to a legitimate state objective. (Citations omitted).
Turning to the trial court’s conclusion that all mortgagees should be treated equally for purposes of the City’s nuisance abatement procedures, we must respectfully disagree. Abating a nuisance that involves an unsafe or unfit structure approaches a condemnation proceeding and could drastically diminish the value of the security interest so that notice should be required to the mortgagee. Cf. Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983)(mortgagee entitled to notice before tax sale because “tax sale immediately and drastically diminishes the value of [mortgagee’s] security interest.”); Seaboard All-Florida Ry. v. Leavitt, 105 Fla. 600, 141 So. 886 (1932)(mortgagee entitled to notice of eminent domain proceedings). On the other hand, assessing a lien for cutting grass and cleaning away debris would not ordinarily amount to a drastic diminishment of the value of a mortgagee’s security interest. Thus, the fact that section 18-3 divides mortgagees into classes, those entitled to notice and those not entitled to notice, does not violate equal protection concerns because the division is rationally related to a legitimate governmental objective. See Haber v. State, 396 So.2d 707, 708 (Fla.1981).
In addition to the rationale utilized by the trial court, Head argues that section 18-3(c) violates equal protection principles because it creates a class of persons with interests in real property, comprised of owners and occupants of the property, who are provided notice of an alleged nuisance, and another class, comprised of mortgage holders, who are not provided notice. Head submits that, if a mortgage holder is provided notice of a nuisance, the mortgage holder could require the owner of the property to take action, threaten foreclosure, or it could personally abate the nuisance.
We agree with the City that there is a rational basis for the different treatment of mortgagees in contrast to owners or occupants. Mortgagees, owners and oc *1269 cupants are not similarly situated. A mortgagee has a security interest in the property, but no present right of possession. The owner or occupant has the right of immediate possession. If afforded notice of a nuisance, a mortgagee does not have an inherent right to enter upon the property and abate the nuisance. Moreover, it would be a substantial burden on the City to await foreclosure proceedings by the mortgagee in order to abate a nuisance which by its very nature presents issues of public health and safety.

Due Process

In Zipperer, the Eleventh Circuit held that the imposition and prioritization of a special assessment lien on mortgaged land did not deprive the mortgagee of his property interest and, therefore, there was no violation of the mortgagee’s due process rights by failing to give him actual notice of the imposition of the lien. In arguing that notice was required, the mortgagee in Zipperer had relied upon Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), which recognized the broad proposition that a mortgagee was entitled to notice reasonably calculated to apprise him of a pending tax sale because that tax sale immediately and drastically diminished the value of his protected property interest. The Court explained that a “tax sale immediately and drastically diminishes the value of [a mortgagee’s] security interest by granting the tax-sale purchaser a lien with priority over that of all other creditors.” Id. at 798, 103 S.Ct. 2706.
In rejecting a requirement of notice of the assessment lien before it, the Zipperer court relied upon a decision by the Fifth Circuit Court of Appeals in Federal Deposit Ins. Corp. v. City of New Iberia, 921 F.2d 610 (5th Cir.1991), in which the mortgagee had argued that the levying of a special assessment and lien for public improvements constituted a “taking.” The New Iberia court disagreed, holding that the imposition of a special assessment and its consequent lien prioritization did not constitutionally impair or deprive the mortgagee of his interest in. the mortgaged land. The court distinguished Mennonite stating:
Although Mennonite espoused a far-reaching requirement of notice to property owners adversely affected by state actions, the case did not analyze, beyond its straightforward facts, what constitutes a “deprivation” of property. It is hardly arguable that under Indiana’s law, that the interest of a mortgagee is “drastically diminished” by a tax sale that yields a lien with priority over all recorded interests. Mennonite in no way suggested, however, that the taxing authority’s decision to levy taxes, which resulted in the unpaid assessment on the underlying property, similarly affected the mortgagee or demanded adequate notice to the mortgagee. Yet FDIC’s position in this court, because it rests on the issue whether New Iberia’s special assessment was matched by the value of improvements conferred on the subdivision, inextricably entwines the legislative decision to tax with the procedural question of notice. This troubling connection, not envisioned by Mennonite, proves to be the Achilles’ heel of FDIC’s argument.
Id. at 614.
In New Iberia, the court went on to rule that a constitutional “taking” analysis did not depend on the precise measurement of the costs and benefits of municipal improvements. Id. The court explained that there had never been any contention that New Iberia’s special assessment was confiscatory, noting the considerable law that local tax assessments are not struck down *1270 as violative of the Fourteenth Amendment unless they amount to outright confiscation of property. Id. at 615. Said the court:
To allow the mortgagee to assert an unconstitutional taking because of a special assessment sought by the landowner would allow the mortgagee potentially to receive whatever benefit did result from the improvements without having to pay for them. Moreover, this claim by the mortgagee would place an impossible, if not absurd, burden upon the taxing authority: to police the landowner’s requests for assistance with improvements so that his mortgagee will not be discomfited by the ensuing special assessments.
Id. at 615.
New Iberia concluded that:
[t]he Fourteenth Amendment comprehends a challenge to a special tax assessment only if it is so palpably punitive or arbitrary as to confer no benefit on the landowner, or “force[s] a landowner to make an improvement that, while valuable to others, is useless to him.”
Id. at 616 (quoting Furey v. City of Sacramento, 780 F.2d 1448, 1454 (9th Cir.1986)).
Similarly, the Zipperer court reasoned:
We agree that had there been a tax sale of the mortgaged property which nullified Zipperer’s entire interest as a mortgagee, Zipperer’s interest would have been as “immediately and drastically diminished” as the mortgagee’s interest in Mennonite. It is uncontroverted, however, that Zipperer, as the present landowner, will retain a significant interest in the land even after its subordination to the special assessment. Therefore, the imposition of the special assessments and their lien prioritization do not immediately and drastically diminish his interests in a manner that would implicate a Mennonite due process deprivation.
41 F.3d at 624.
Here, the City argues that the rationale of Zipperer and New Iberia compels reversal. While Zipperer and New Iberia do stand for the proposition that an ordinance imposing and prioritizing special assessment hens on mortgaged land are not unconstitutional simply because they fail to give notice to the mortgagees of the imposition of the liens, these cases are not as far reaching as the City proposes. In New Iberia, there was never any contention by the mortgagee that New Iberia’s special assessment was confiscatory or drastically diminished the value of the security interest. New Iberia, 921 F.2d at 615. Similarly, in Zipperer, it was uncontroverted that the mortgagee retained a significant interest in his land, enhanced by the infrastructure improvements financed by the assessment, even after the subordination of his mortgage to the special assessment. Zipperer, 41 F.3d at 624.
Accordingly, while we agree with the City that its ordinance is not facially unconstitutional on due process grounds there remains an issue whether the ordinance is unconstitutional as applied to Head.[1] Head argues that the ordinance is unconstitutional as applied because the imposition of a lien and its consequent prioritization constitutes such a significant sum *1271 that it severely impairs his security interest.
The record reflects that Head sold the property to Mr. Jacques for $7,500 in 1996; that Head received a mortgage note in the face amount of $6,300 at the time of sale; and that, at the time of the foreclosure, the balance of unpaid principal and interest due under the mortgage note was $8,660.89. Head submits that, when the lien is satisfied, his security interest which Head holds will have been so drastically diminished that the principle of Mennonite would apply.
We do not reach the as applied arguments made by Head on appeal, however, because the trial judge did not expressly address the as applied argument and the record in this case does not contain sufficient facts, such as the current fair market value of the property and the current balance remaining on Head’s mortgage, by which it could be determined whether the City’s ordinance is unconstitutional as applied to Head. On remand, the trial court may conduct a further hearing in which Head may attempt to show that the amount of the City’s assessment, including costs and fees, has so drastically diminished the value of Head’s interest in this property such that the lien could not have been imposed and given priority without affording Head prior notice of the proceedings. See Mennonite.
REVERSED and REMANDED for further proceedings consistent with this opinion.
ERVIN AND DAVIS, JJ., CONCUR.

. As Justice Scalia explained in his dissenting opinion in Ada v. Guam Society of Obstetricians and Gynecologists, 506 U.S. 1011, 113 S.Ct. 633, 121 L.Ed.2d 564 (1992), courts rarely declare statutes facially unconstitutional because to do so there must exist "no set of circumstances in which the statute can constitutionally be applied;” whereas “[t]he practical effect of holding a statute unconstitutional 'as applied' is to prevent its future application in a similar context, but not to render it utterly inoperative.” (emphasis in original).