Rohn v. Rohn.

98  509
a204s 185

### William Rohn v. Ida Rohn, Adm'x, etc.

1. ESTOPPEL—*Of an Administrator by Acts in a Private Capacity.*— One who brings a suit entirely in a representative capacity, as the person appointed by a probate court to administer, upon the estate of a deceased person, is not estopped as such representative by anything he may have done as an individual unless the appointment relates back to the time of the death of such person and validates all acts done by him prior to his appointment in the interest of and for the benefit of the estate which he is administering.

2. ADMINISTRATION OF ESTATES—*Duty of One Acting De Son Tort.*— Whatever is honestly done by one acting in the character of an executor *de son tort*, and not contrary to law, is binding between the parties, and a settlement made in good faith with such an executor is valid.

3. SAME—*Executor De Son Tort Not Protected by Taking Out Letters of Administration.*—A person who is sued as an executor *de son tort* can not defeat the action by taking out letters of administration pending the suit, but he may render legitimate all his acts *ab initio*.

4. SAME—*Servants of an Executor De Son Tort.*—A person, as the mere servant of another, who is acting as an executor *de son tort*, can not be held responsible as such executor.

5. EXECUTOR DE SON TORT—*Duties, etc.*—A person acting as executor *de son tort* is bound to exercise such diligence in regard to the estate he is so representing as prudent men ordinarily bestow upon their own affairs.

Trespass on the Case, for the conversion of the effects of a deceased person. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Affirmed. Mr. Presiding Justice FREEMAN dissenting. Opinion filed November 26, 1901.

**Statement.**—This was an action of trespass on the case, brought by Ida Rohn as administratrix of the estate of her husband, William Rohn, Jr., deceased, who died October 10, 1893. Letters of administration were issued to plaintiff January 26, 1897, and this suit was begun January 19, 1899. The defendant was the father of the deceased. The deceased left a widow and two children and $11,000 worth of property, and no debts.

The first count of the amended declaration alleges that defendant intermeddled with the affairs of deceased and acted as executor *de son tort* of the estate, in that he on the 17th day of October, 1893, extended the time of payment of an indebtedness of $1,500 of George Wildner to said estate for a period of three years, and, at the expiration of said period, said Wildner was solvent, and he might, by the exercise of due care and diligence, have collected said sum of money from said Wildner, but negligently did not collect said indebtedness, but negligently permitted the same to stand uncollected; and afterward the said Wildner became insolvent and said defendant was unable to collect said money, and plaintiff, by reason of said negligence of defendant, has been unable to collect the same or any part thereof, and defendant, though often requested, has refused to pay plaintiff said sum of $1,500; further alleges that, had defendant exercised due care and diligence at any time after the death of deceased and up to and including the maturity of said extended period of three years for the collection of said sum, said money could have been collected by defendant from said Wildner.

The third count alleges that shortly prior to his decease, William Rohn, Jr., had sold to Wildner his partnership interest in a firm consisting of William Rohn, Jr., and said Wildner, for $8,500; that said $8,500 had not been paid by Wildner to said William Rohn, Jr., at the time of his de-

cease; that defendant intermeddled with the affairs of said deceased and acted as executor *de son tort* of deceased's estate; that, prior to his decease, William Rohn, Jr., had drawn up a bill of sale of his said interest in said partnership business to Wildner for the consideration of $8,500, which said bill of sale had not been delivered at the time of his death; that defendant, acting as executor *de son tort*, negligently delivered to Wildner said bill of sale without collecting from him $1,500 of the consideration of $8,500 expressed in said bill of sale; that said $1,500 could have been collected by defendant had he exercised due care and diligence; that Wildner has since become insolvent, and plaintiff has been unable to collect the same or any part thereof; that by reason thereof said $1,500 and interest thereon has been lost to the estate of William Rohn, Jr., deceased.

Upon issue joined the cause was submitted to a jury who returned a verdict of $1,762.50 for the plaintiff, upon which there was judgment, from which the defendant therein presents this appeal.

Louis A. HEILE, attorney for appellant.

CHRISTENSEN & HEIZER, attorneys for appellee.

MR. JUSTICE WATERMAN delivered the opinion of the court.

Upon the trial it appeared that William Rohn, Jr., being aware that he was about to die, consulted with Mr. Louis Heile, Mr. Adolph Heile and his father, concerning a proper and judicious disposition of his affairs; that Mr. William Rohn, Jr., objected much to having his estate probated, saying that it would make a great deal of trouble, especially with a partnership which he then had with one George Wildner; that Mrs. Ida Rohn was present at this conversation in which Mr. Rohn told Mr. Adolph Heile that Wildner, his partner, was willing to buy him out at the sum of $8,500, which had substantially been agreed upon between them; that Mr. Adolph Heile advised them that it would be a good thing for him to dispose of his interest in the business dur-

ing his lifetime. William Rohn, Jr., at that time said he
wanted to leave all his effects in the care of his father, in
whom he had perfect confidence; that at that time the
amount Mr. William Rohn would have in case he made the
contemplated sale was figured out and amounted to $11,000.
As to this he said: "My wife is the next to me and I want
to secure to her $5,000 of that and to each of my two chil-
dren $3,000;" that within a week or two after the death of
William Rohn, Jr., William Rohn, his father, Ida Rohn and
a friend of hers by the name of Schultz, came to Mr. Heile's
office and Ida Rohn said that her husband was dead and
it would be better to get things into proper shape in accord-
ance with the wish of her husband, expressed by him when
he was last at Mr. Heile's office, and she wanted Mr. Heile
to draw up some kind of a document to show that she was
to have $5,000, and each of the children $3,000, of her hus-
band's estate. Whereupon Mr. Heile prepared a declara-
tion of trust from memoranda submitted to him at that
time. This declaration of trust was afterward signed by
William Rohn, the father of William Rohn, Jr. This dec-
laration acknowledges that he has received from his son,
William Rohn, Jr., deceased, $11,000, in notes partly
secured and partly unsecured, and that he holds the same in
trust for Ida Rohn and her two children, $5,000 for her and
$3,000 for each of the children; that he agrees to collect
interest on all and pay same to Ida Rohn during the minority
of the children and agrees to turn over to Ida Rohn in notes
her $5,000 upon.demand, and to turn over $3,000 to each of
the children when they become of age, and agrees to collect
said notes and to re-invest the proceeds according to his best
judgment, and directs his administrators, executors and heirs
to turn over.what securities he may have at the time of his
death for said minors to some other person to be named as
trustee by Ida Rohn.

Upon this declaration of trust there is indorsed as fol-
lows:

"I have this day received as administratrix of the estate
of William Rohn, deceased, for the property described

herein, the amount of $9,500 in cash and all interest thereon to date.

Chicago, August 13, 1897.

Ida Rohn,

Individually and as administratrix of the estate of William Rohn, Jr., deceased."

It also appeared upon the trial that some weeks prior to William Rohn, Jr's., death, it had been agreed between him and his partner, Wildner, that a sale of his partnership interest should be made to Wildner for $8,500; that a bill of sale of such partnership interest had been drawn up, signed by Wm. Rohn, Jr., and left with his wife, who after his death gave it to William Rohn for delivery to Wildner, which delivery William Rohn made; that Wildner, to make up the $8,500 agreed to be paid by him, as had been arranged before the death of William Rohn, Jr., gave two $800 mortgages and $400 in cash, making $2,000, which Wildner, without assistance, was able to raise; that Wildner's mother loaned him $2,000, receiving his note therefor, and Rudolph Rohn, a brother of William Rohn, also loaned Wildner $2,000, taking his note therefor, so that Wildner was able, as he did after the death of William Rohn, Jr., and in accordance with the agreement made with him, to turn over in payment, mortgages amounting to $1,600, and $4,400 in cash. For the balance he gave two notes, one for $1,000 maturing in one year and one for $1,500 maturing in three years. These were judgment notes, dated October 17, 1893, payable to the order of Mrs. William Rohn, Jr., with interest at seven per cent per annum.

Wildner, about 1896, came to be owing " Rudolph Rohn a good deal of money, and to secure the same gave to Rudolph Rohn a chattel mortgage upon his stock of goods and material, for $3,000." The $1,000 note given by Wildner, which matured October 17, 1895, was paid. Wildner not having paid the $2,000 he owed to his mother, she took judgment against him therefor, whereupon Rudolph Rohn paid his mother the amount of the same and took Wildner's property upon his chattel mortgage.

Wildner has, since the foreclosure of the chattel mortgage, been, it appeared, financially irresponsible, working for a salary of $50 per month.

Some time after the entry of judgment against Wildner and the foreclosure of the chattel mortgage given by him, letters of administration were issued to Ida Rohn upon the estate of her husband, William Rohn, Jr., and this suit was begun January 19, 1899.

Appellant urges that appellee is estopped from insisting that he is an executor *de son tort* because that all he did in the way of taking possession of any of the estate left by his son was at her request. If this suit were prosecuted by Ida Rohn in her own right, such insistence might be well taken.

The suit is not by Ida Rohn, for her own benefit, but entirely in a representative capacity, as the person appointed by the Probate Court to administer upon the estate of her deceased husband; and as such representative she is not estopped by anything that she may have done as an individual, unless her appointment relates back to the time of the death of William Rohn, Jr., and validated all acts by her done prior to her appointment, that were in the interest of and for the benefit of the estate of which she is now administratrix.

It appeared upon the trial that the note for $1,500, out of which this suit has grown, as indeed all of the money, notes and mortgages given by Wildner upon his purchase of the partnership interest, were not given until after the death of William Rohn, Jr., although in pursuance of the agreement previously made and in accordance with the bill of sale, signed by William Rohn, Jr., left with his wife, Ida, and by her after his death handed to William Rohn for delivery to Wildner upon reception from him of the notes, money and mortgages, which he was to and did give therefor.

The situation existing at the time of the death of William Rohn, Jr., was that while an agreement of sale had been made, it had not been carried out. None of the written documents to be transferred had actually been delivered. Wildner, as the surviving partner, a person of very limited

means, was by law entitled to administer upon the partnership effects. The position was one in which it is evident it was for the interest of the estate of William Rohn, Jr., that the contemplated sale should be carried out as speedily as possible.

That an administration of the partnership assets by Wildner, or any other person, would have realized for the estate of William Rohn, Jr., $8,500, there is no evidence and is quite improbable. What, therefore. Ida Rohn did in the way of handing over the bill of sale, signed by her husband, although an intermeddling with the estate and constituting her an executrix *de son tort*, was undoubtedly in the interest of and for the benefit of the estate. What she did in the way of having a declaration of trust drawn up and signed by William Rohn was ineffectual to determine the interest of her children or her own in said estate. The law fixed that and no act of either appellant or appellee could change the disposition which the law made.

In Riley v. Loughrey, Administrator, 22 Ill. 99, it is said substantially :

"Whatever is honestly done by one acting in the character of an executor *de son tort* and not contrary to law, is binding between the parties. A settlement made in good faith with such an executor is valid."

And in Camp v. Elliott & Brewster, 38 Ill. App. 337, the court says :

"The acts of Camp before he was appointed administrator would be the acts of an executor *de son tort* and would be held good in so far as they would have been had he at the time been actually the administrator of the estate."

In taking from Wildner the notes, money and mortgages given by him, appellant acted by the direction of appellee, who was then entitled to take out letters, and to whom letters of administration were, some three years thereafter, issued.

In Vaughan v. Browne, Str. 1106, the Court of King's Bench laid down the doctrine that a person who is sued as an executor *de son tort* can not defeat the suit by taking out

letters of administration, pending the suit, because such suit was well commenced, yet such an administration will legitimate all acts *ab initio.* A report of this case will be found in Andrews, 328, and it was approved in Curtis v. Vernon, 3 Term Rep. 587.

This doctrine is also approved in Rattoon v. Overacker, Executor, 8 Johnson, 127; also in Shillaber v. Wyman, 15 Mass. 322, and in Magner v. Ryan et al., 19 Mo. 197.

One who acts as the mere servant of another who is an executor *de son tort,* can not be held. If appellant had done nothing more than to follow the directions of Ida Rohn when she assumed to intermeddle with the property of the estate, we are not prepared to hold that a, recovery could have been had against him in the present action by her as administratrix. The evidence shows that he did more. He and she, doubtless with the best intentions, but in disregard of the statutory law of this State, assumed to create a trust over the effects of the estate, and he thereby undertook to collect the notes so intrusted to him. Such being the case, we think that as the court below instructed, he was bound to exercise such diligence in regard to the note for $1,500, as prudent men ordinarily bestow upon their own affairs. It was a judgment note, and notwithstanding the chattel mortgage then existing upon the goods of Wildner, he might have had judgment entered thereon.

It may well be said, as is urged, that the note being payable to Ida Rohn, it was as much her duty to see that proper steps were taken to enforce its payment as his, and that, save by her consent, no judgment could be obtained thereon.

We are not, however, in this case dealing with the negligence of Ida Rohn, but rather with the rights of the estate of William Rohn, Jr., and the conduct of appellant.

We think the evidence such that the jury had a right to find that appellant did not, in respect to the collection of this note, exercise such diligence as prudent men ordinarily bestow upon their affairs, and this, although, when it became due, Wildner asked him to wait until after the

election and he would try and get a partner and make a stock company and would see that the note was protected.

The judgment of the Superior Court is affirmed.

Mr. Presiding Justice FREEMAN dissenting.