MATILDA P. FIEHE, an insane person, by her guardian and next friend, FRANK A. BELL, *Plaintiff in Error,* v. R. E. HOUSEHOLDER COMPANY, a Corporation, *Defendant in Error.*

En Banc.

Opinion filed May 15, 1929.

*Phipps & Coles,* for Plaintiff in Error;

*E. B. Drumright, Mabry, Reaves & Carlton, Taliaferro, Morris & Carter* and *Reddick A. Bowman,* for Defendant in Error.

BUFORD, J.—A suit in ejectment was filed by Matilda P. Fiehe, an insane person, by her guardian and next friend, Frank A. Bell, against R. E. Householder Company, a corporation, to recover possession of two certain lots in Tampa, the said defendant being in possession of and claiming the legal title to the property.

The question presented is whether or not the purported guardian sale made by one Antone Fiehe then purporting to act as guardian of Matilda P. Fiehe on or about the 5th day of October, 1899, was invalid. The defendant claims title through *mesne* conveyances from the purchaser at the guardian sale.

The plaintiff, Matilda P. Fiehe, was adjudged a lunatic on the 20th day of July, 1895, and at all times since has

been an insane person. Antone Fiehe, who made the purported sale of the property as guardian for the insane person, is now dead. Frank A. Bell is the now qualified and acting guardian of the plaintiff.

The plaintiff at the time of the sale was the owner in fee simple of the property involved in the suit. If the purported guardian's sale is invalid, the title to the property is still vested in the plaintiff so far as the records in this case disclosed. If the guardian's sale was valid the title passed by the deed made in pursuance to such sale.

At the trial had in the lower court the plaintiff introduced in evidence certified copy of the decree of the Circuit Court adjudging the plaintiff a lunatic, a certified copy of the proceeding appointing Frank A. Bell as guardian and approving his bond, and a certified copy of a patent from the United States of America to Lewis Bell, a certified copy of a decree in a partition suit vesting the title of the property involved in this litigation to the plaintiff.

The defendant introduced in evidence certified copy of order of the Circuit Judge appointing Antone Fiehe guardian of the estate of Matilda P. Fiehe, an insane person, and the petition on which such order was based together with an order dated December 27, 1907, ordering that said petition and order be recorded by the clerk of the Circuit Court *nuc pro tunc* as of the 14th day of July, A. D. 1898. The introduction of these instruments in evidence was objected to by the plaintiff on the ground, amongst others, that they were not, and neither of them was, recorded on the date of, or before the date of the guardian's sale of the property purporting to be made pursuant to such an order. The objection was overruled. Judgment was for the defendant and the action of the court in overruling the objection of the plaintiff to the introduction of the certified

copies of the instrument last above mentioned was assigned as error upon writ of error being taken to such judgment.

There are other assignments of error but it is not necessary for us to discuss the question raised thereby because the judgment must be reversed upon the first assignment of error.

The purported order appointing Antone Fiehe as guardian of the estate of the insane person appears to have been dated July 14, 1898, and there appears no evidence of its ever having been filed or recorded until December 27, 1907, which was more than nine years after the date of the order and more than eight years after a purported sale of the property of the insane person by one pretending to act as a guardian under such order and appointment so alleged to have been made.

The rules of law applicable to the sale of property belonging to minors by guardians of such minors are applicable alike to sales of property belonging to insane persons by guardians of such insane persons. The purported appointment of Antone Fiehe to be the guardian of the person and estate of Matilda P. Fiehe was made by the circuit judge under authority of Chapter 4359, Laws of Florida, Acts of 1895, which Act provided among other things, that ''The circuit judge of any judicial circuit of this State shall have authority in the exercise of his chancery jurisdiction to appoint guardians of property of persons of unsound minds residing in his circuit having real or personal property within the State.'' There was at the time of the purported appointment of the guardian Antone Fiehe no other authority for the circuit judge to make such appointment and it, therefore, follows that the order appointing Antone Fiehe such guardian was in exercise of a chancery function and was a chancery order and was controlled by the law as it then existed regarding such chancery orders.

Section 1448 of the Revised Statutes of 1892 was in effect at the time of the appointment and at the time of the purported sale by the purported guardian. This section provided as follows:

"Decrees in equity may be signed by the judge when pronounced and shall be recorded upon the minutes of the court without any other enrollment. And no process shall be issued or other proceedings had on any final decree or order until the same shall have been signed and recorded as aforesaid."

This provision of the statute remains with us up to this time, changed only in that the statute now provides that such decrees or orders shall be recorded in Chancery Order Book instead of the minutes.

This Court in the case of Thompkins v. Thompkins, 93 Fla. 844, 112 So. R. 766, in construing the effect of the statute above referred to, held:

"A master in chancery is without authority to proceed to perform the functions designated in the order of appointment until such order shall have been filed and recorded, as is required by statute."

And further in the same opinion the Court say:

"This statute is mandatory in terms, and expressly prohibits the issuance of process, or other proceedings on any final decree or order, until signatures and recordation thereof. It makes signature and recordation a full equivalent of enrollment under the English chancery practice, and limits the enforcement of the decree until those equivalent acts are performed. No court is authorized to disregard the mandatory language of a statute, and it follows that until signa-

ture and recordation of a final decree or order no proceedings can be had thereon.''

''The difference between the requirement of the original statute and present statute is that under the original statute the decrees and orders were required to be recorded in the minutes of the Court, while under the amended statute they are required to be recorded in the Chancery Order Book. It, therefore, follows that a master in chancery is without authority to proceed to perform the functions designated in the order of appointment until such order shall have been filed and recorded, as is required by statute.''

See also Wilmott v. Equitable Building & Loan Association, 44 Fla. 815, 33 So. R. 447. In the latter case this Court, in construing the identical statute here involved, say:

''This statute is mandatory in terms, and expressly prohibits the issuance of process, or other proceedings on any final decree or order, until signature and recordation thereof. It makes signature and recordation a full equivalent of enrollment under the English chancery practice, and limits the enforcement of the decree until those equivalent acts are performed. No court is authorized to disregard the mandatory language of a statute, and it follows that until signature and *recordation* of a final decree or order no proceeding can be had thereon. Taylor v. Gladwin, 40 Mich. 232; Minthorne's Executors v. Thompkins' Executors, 2 Paige 102; Clapp v. Thaxter, 7 Gray 384. See also Hugh v. Washington, 65 Ill. 245.''

Therefore, it is the established rule in this State that before any final decree or order in chancery acquires force and effect it must be signed by the court and *recorded* as

directed by the statute. The signature of the court is no more important than the recordation of the decree or order. Neither is such recordation more important than the signature of the court. The two requirements must be met before there *is* an active functioning final decree or order. See Grimsley v. Rosenberg, 94 Fla. 673, 114 So. R. 553.

The order appointing the guardian became effective when recorded. At that time the judge who signed the order and probably the guardian under the order had departed this life and thereupon the question arises, what was the effect of the order *nunc pro tunc* made by judge of the circuit court sitting in chancery on December 27, 1907? If the guardian had been living at the time this order was made, there is no question but that the order would have had the effect of giving life to the order of appointment which had been made by a former judge and who had since passed from the scene and thereunder the guardian without making further application for appointment as guardian could have proceeded to function in all respects as if the order had been recorded at the time named in the *nunc pro tunc* order. But this is not the force and effect which is sought to be given in the instant case. It is contended that this order *nunc pro tunc* has breathed life and force into proceedings for which lawful foundation did not exist and has made effective and regular actions taken by the guardian under authority of the purported appointment and has validated orders of the Probate Court where at the time of such actions by the guardian and orders by the Probate Court, there existed no lawful authority for such guardian to act in that capacity and, therefore, no lawful authority in him either to file a petition for sale of his ward's property or in the Probate Court to make an order granting such petition.

It follows that the title attempted to have been conveyed

by the guardian was not conveyed but remained vested in his ward, and, if divested at all that title was necessarily divested by an order made without notice to anybody on the 27th day of December, 1907, which was more than eight years after the purported sale.

"Where after the submission of a cause a party dies, a revivor may be obviated by entering a decree *nunc pro tunc* as of the date of the hearing. But a decree entered *nunc pro tunc* presupposes a decree previously passed or allowed and not entered, or else a cause which has been heard and is under advisement. The expedient can not be resorted to for the purpose of validating a proceeding which was void at the time it was had." 21 C. J. 652.

"Moreover, this fiction of a decree *nunc pro tunc* is not indulged or given effect for any other purpose than that of making the decree valid as between the parties. So far as the enforcement of the decree is concerned, it is to be considered as being in force only from the time when it is actually entered." 10 R. C. L. 561.

In Eslow v. Township of Albion et al., 32 Mich. 193, it is held:

"Equity Pleading and Practice: Orders *nunc pro tunc*: Proofs taken without authority. It is not within the purview of an order *nunc pro tunc* to operate *ex post facto* to give force to a chamber order which was void for want of jurisdiction, or to give validity to proofs taken in a chancery cause without authority of law under such void order."

Section 1724 of the General Statutes of Florida was a statute which provided in substance that the title of any purchaser of real estate who has held possession for five

years when the purchase was for full value, without fraud, at a sale made by an executor or guardian, should not be questioned by any heir or ward upon the ground of any irregularity in the proceeding or conveyances. This provision of the statute was intended to cure the irregularities in such sales, just as the order *nunc pro tunc* in this case was intended to cure what appears to have been deemed to be an irregularity in the sale here involved. This Court, in an able opinion prepared by Mr. Justice ELLIS, in the case of McIntyre v. Parker, 77 Fla. 690, 82 So. R. 253, declared that that statute had no application in the case of a sale by a guardian under an order of a judge who had no jurisdiction to make the order of sale and we think that the reasoning set forth in that opinion is entirely applicable to the instant case.

Antone Fiehe had no right to apply to the Probate Court for an order for the sale of property belonging to Matilda P. Fiehe, except in the capacity of a duly appointed and qualified guardian for her and there was no existing valid order authorizing him to act as such guardian at the time when he made the application because the order purporting to make his appointment, as is shown by the record, had never been filed nor recorded, and in this condition was inoperative and of no effect. It appears to us that to hold that the order *nunc pro tunc* made on December 27, 1907, breathed life and vitality into the proceedings under which the alleged sale was made which had been void and of no force or effect for a period of more than eight years and resulted in, on the 27th day of December, 1907, divesting an insane person then under guardianship of title to her property without notice and without a hearing is to disregard the due process clause of our Constitution.

In 6 R. C. L. 446, will be found a clear and concise state-

ment of the essential elements of due process of law, which we quote with approval, as follows:

"The essential elements of due process of law are notice, and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. In fact one of the most famous and perhaps the most often quoted definition of due process of law is that of Daniel Webster in his argument in the Dartmouth College case, in which he declared that by due process of law was meant 'a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial.' Somewhat similar is the statement that it is a rule as old as the law that no one shall be personally bound until he has had his day in court, by which is meant, until he has been duly cited to appear, and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression and can never be upheld where justice is fairly administered."

If the practice indulged in in the instant case could avail for the purpose here sought to be accomplished thereby, then the provisions of Section 1448, Revised Statutes of 1892, Section 3160, Rev. Gen. Stats., as amended by Chapter 8574, Acts of 1921, will be of no force and effect, or could be effectually nullified at any time. A master might be appointed to take testimony, as was the case in Thompkins v. Thompkins, *supra,* the order be not recorded, testimony be taken by the purported master and submitted to the court, a judgment entered upon the same, and upon attack being made against a judgment or decree entered under such circumstances, the court could validate the whole un-

authorized procedure by, without notice to anyone, entering an order *nunc pro tunc.*

There is no question involved in this case about the authority of a chancellor to enter orders *nunc pro tunc.* The only question here involved in is: Will such an order breathe life and vitality into and make valid and effective proceedings which otherwise would stand void and without force and effect? We must hold that such is not the function of such orders and that for this reason the judgment in the case at bar should be reversed. It is so ordered.

Reversed.

TERRELL, C. J., AND WHITFIELD AND ELLIS, J. J., concur.

STRUM AND BROWN, J. J., dissent.

BROWN, J. (dissenting).—My view of this question is that the court has a continuing power over its records and authority to make them speak the truth. And where a judgment or decree or order was actually rendered, but not actually entered on the record in consequence of accident or mistake, or the neglect or omission of the clerk, the court has the inherent power to order such judgment, decree or order to be entered *nunc pro tunc,* the fact of its rendition being satisfactorily established and no intervening rights of innocent third parties being prejudiced. Fla. Development Co. v. Polk County National Bank, 76 Fla. 629, 80 So R. 560; 34 C. J. 71-81.

STRUM, J., concurs.

(See the opinions on rehearings, following.)