FARRINGTON, OTIS, Associate Judge.
Appellant, who was plaintiff below, sued for an accounting by appellee, defendant below, who was a mortgagee in possession of an orange grove and adjoining land, owned by the Estate of Floyd Brooks, deceased. Defendant filed a statement of account of his operations while in possession of the property, and counterclaimed for alleged losses from these operations and to foreclose his mortgage. From a final decree favorable to defendant, plaintiff appeals.
*580 Floyd Brooks died in August, 1952, the owner of a ten acre orange grove, and twenty acres of adjoining land in Lake County, Florida, hereinafter referred to as the Floyd Brooks Property. This property was subject to a purchase money mortgage which defendant, W. T. Adams, acquired by assignment in January, 1953. On the date of his death, Floyd Brooks owed Lady Lake I. & F. Company Three Hundred and 02/100 ($300.02) Dollars and J. W. Richardson & Sons One Hundred Nineteen and 50/100 ($119.50) Dollars.
At the time of his death, Floyd Brooks was residing in the home of his son, Donald Brooks, in Jacksonville, Florida. On November 8, 1952, Donald Brooks called on W. T. Adams in Lake County, Florida, to make arrangements for the future care of the Floyd Brooks Property. At this meeting, Donald Brooks authorized W. T. Adams to pick the fall crop of Parson Brown oranges from the ten acre grove. Plaintiff contended that W. T. Adams agreed- — (1) to pick the fall orange crop; (2) to pay the obligations to Lady Lake I. & F. Company and J. W. Richardson & Sons out of the proceeds of the sale of this orange crop; and (3) to account to the heirs of Floyd Brooks for the balance, if any. Defendant, W. T. Adams, contended that Donald Brooks traded the 1952 fall orange crop to defendant in consideration of defendant’s agreement to satisfy the debts of Floyd Brooks to Lady Lake I. & F. Company and J. W. Richardson & Sons.
In February, 1953, after acquiring the mortgage encumbering the Floyd Brooks Property, defendant took possession of the property, with the consent of Donald Brooks, and received the crop yields therefrom until after the commencement of this suit. Plaintiff, Donald Brooks, was appointed Administrator of the Estate of Floyd Brooks, Deceased, in February, 1954,
In April, 1955, plaintiff filed this suit, alleging that defendant was a trespasser on the property and demanding an accounting of defendant’s operations while in possession. W. T. Adams counterclaimed in two counts. In the first count he claimed reimbursement from plaintiff for losses resulting from an alleged excess of expenditures in operating the property over income received therefrom. In the second count he sought foreclosure of the mortgage encumbering the property. In the pleading stages, the defendant W. T. Adams filed a schedule of income and expenditures of his operation of the Floyd Brooks Property. The Court referred the case to a Special Master, and entered a pre-trial order to the effect that the defendant, W. T. Adams, had the burden of proving the account rendered by him to the plaintiff.
Extensive testimony was taken before the Special Master concerning the agreement between Donald Brooks and defendant concerning the picking of the 1952 fall orange crop; the agreement under which defendant went into possession of the Floyd Brooks Property; and the accounting filed by defendant. After the testimony was completed before the Special Master, but before the Special Master made his findings, the Chancellor, upon motion of the plaintiff, withdrew the case from the Special Master and filed his findings based upon the pleadings and the transcript of testimony taken before the Special Master.
Concerning the 1952 fall orange crop and the terms under which defendant went into possession of the Floyd Brooks Property, the Chancellor made the following findings:
“Donald Brooks visited the defendant in Lady Lake soon after the death of Floyd Brooks and long before he was appointed administrator of the estate, and arranged with defendant to handle the 1952-53 crop of oranges and to apply the proceeds to the payment of expenses accrued for care of the grove and the mortgage.
“Shortly after the first visit, when the 1952-53 crop was disposed of, fol *581 lowing the death of Floyd Brooks, Donald Brooks and one of his brothers visited the defendant at his home in Lady Lake where they discussed. the mortgage, which defendant then held, and advised him that the heirs were through with the grove and would put nothing more into it and that he could do what he wished with the grove, but not to send them any bills and Donald Brooks confirmed this action later in Jacksonville, Florida, in the presence of J. W. Richardson.
“Defendant Adams took charge of the grove during the month of February, 19S3. The grove had been neglected and was in bad condition. The heirs of the deceased owner did not consider it worth spending their money on. Defendant held a mortgage on the property, which was in default in the payment of one note for $2950.00. He could, under the terms of the mortgage, have foreclosed immediately for the full amount of $8400.00 secured by the mortgage. Fie did not elect to foreclose. After consultation with some of the heirs, and particularly with Donald Brooks as stated above, he undertook the task of caring for the grove to protect his investment as well as the interest of the owners.”
The quoted findings of the Chancellor are amply supported by competent evidence, and we accept them as correct.
By his finding that Donald Brooks arranged with defendant to apply the proceeds of the sale of the 1952 fall orange crop to the payment of expenses accrued for care of the grove (referring to the debts of Three Hundred and 02/100 ($300.02) Dollars owed to the Lady Lake I. & F. Company and One Hundred Nineteen and 50/100 ($119.50) Dollars owed to J. W. Richardson & Sons) and the mortgage, the Chancellor rejected the contention of defendant that this crop of Parson Brown oranges was traded to him in return for his assumption of the debts to Lady Lake I. & F. Company and J. W. Richardson & S'ons. Defendant did not include the 1952 Parson Brown orange crop in his accounting. In his deposition and in his early testimony he denied ever receiving this crop. In the final stages of the testimony his memory was refreshed, and he acknowledged receiving this crop of oranges. His testimony was vague and indefinite as to the number of boxes picked and his only disclosure as to the price received was his statement that: “ * * * It was just about an even deal as far as that goes, because there wasn’t too much fruit and the price wasn’t so high.- The price was cheap on fruit.” On remand of this case, defendant should be required to file an accounting - of the 1952 Parson Brown orange crop. Upon settlement of this account, the balance, if any, over the debts to Lady Lake I. & F. Company and J. W. Richardson & Sons should be credited against the mortgage indebtedness
Plaintiff’s complaint based on the contention that the defendant was a trespasser was dismissed by the trial court with prejudice. The trial court correctly found from the evidence and from admissions in plaintiff’s answer to the counterclaim that defendant was not a trespasser, but was a mortgagee in possession with the consent of the plaintiff. Although the consent of Donald Brooks to plaintiff’s possession was given prior to the issuance of letters of administration to Donald Brooks, it was binding on the Estate of Floyd Brooks, Deceased, by reason of the general rule that the grant of letters of administration relates back to the date of death of the decedent. Griffin v. Workman, Fla.1954, 73 So.2d 844.
Plaintiff contends that the Chancellor should not have dismissed the complaint because of plaintiff’s failure to sustain the contention the defendant was a trespasser, but should have amended the pleadings as authorized by Rule 1.15(a) Florida Rules of Civil Procedure, 30 F.S.A., *582 to conform to the issue actually tried between the parties, i. e., the correctness -vel non of the accounting filed by defendant. This contention loses weight upon consideration of the Court’s findings in their entirety; since it is thereby disclosed that the Court did consider the accounting filed by defendant on its merits, and determined it to be substantially correct. In fact, the Court disallowed Three Hundred and 00/100 ($300.00) Dollars of the Four Hundred and 00/100 ($400.00) Dollars expenditure claimed by defendant in the accounting for the clearing of twenty acres of the Floyd Brooks property and charged defendant with the rental value of fifteen acres of the cleared land, it appearing from the testimony of defendant that fifteen acres of the cleared land were used by defendant for planting a watermelon crop for his own benefit. This adjustment of the account in favor of plaintiff was credited by the Court against the amount found due defendant on his mortgage. The end result was the same as if the complaint had been amended to conform to the issue tried and the accounting ordered based on the prayer of the complaint as amended.
It being established that defendant took possession of the Floyd Brooks Property with the consent of plaintiff for the purpose of protecting defendant’s mortgage lien as well as the interest of the owners, defendant was required to keep an accurate record of all income received and moneys expended during his possession. As was stated in Joyner v. Bernard, 1943, 153 Fla. 372, 14 So.2d 724, 726:
“It is settled that a mortgagee in possession of mortgaged premises is required to account for the rents and profits and is bound to apply them in reduction of the mortgage debt. The mortgagee is not permitted to make a profit out of his possession of the estate. This liability arises of course only when the mortgagee’s possession is in recognition of the mortgage. The burden is on the mortgagee to prove the amount of the rents and profits. See Jones on Mortgages, Vol. 2, 8th Ed., 911, 912, par. 1425; Fegers v. Pompano Farms, 104 Fla. 123, 139 So. 201; 1 C.J.S. Accounting § 41, pages 683, 684; 19 R.C.L. 334-5, par. 108; 36 Am.Jur. 840, 841, par. 301; Williams v. Marmor, 321 Ill. 283, 151 N.E. 880, 46 A.L.R. 132, and annotations beginning on page 138.”
In the accounting filed defendant included a charge of Four Hundred Seventy Two and 00/100 ($472.00) Dollars for his services in caretaking and managing, calculated on the basis of 10% of the gross receipts. Allowance of this charge was error. In the absence of special agreement for such charge, a mortgagee in possession is not entitled to special compensation for management of the mortgaged estate. 36 Am.Jur. Mortgages, § 314, p. 846; Annotation, 170 A.L.R. 181.
Plaintiff vigorously contested the accuracy of the accounting filed by defendant, especially in regard to the box count of oranges produced and the prices received. Defendant’s records introduced in support of his accounting were most informally kept. The crops were sold through a packing house owned by defendant. Picking dates were not indicated. Box counts for each of the five orange crops included in the accounting were listed in even-ten figures. No vouchers were produced to support either income or expenditures.
Plaintiff produced two expert witnesses who testified that there is a close and predictable relationship between the amount of nitrogen contained in the fertilizer put on an orange grove and the production of the grove. Using the fertilizer figures reflected by defendant’s records, the expert witnesses testified that defendant’s production figures were abnormally low. Plaintiff contends that the deficiencies apparent from examination of defendant’s records introduced in support of the statement of accounts together with the testimony of the two expert witnesses was sufficient to overcome defend *583 ant’s positive testimony that the accounts correctly reflected his income and expenditures in operating the grove.
The Chancellor stated in his findings that he was “not impressed by the theoretical figures of the experts,” noted that no experienced or practical citrus grower was called to rebut the account rendered by defendant as to quantity or price, and accepted the account as correct. There is sufficient evidence in the record to support this determination by the Chancellor that the income and expense figures in defendant’s accounting are correct. It is well settled that while the findings of the Chancellor on the facts where the evidence is heard by him and the witnesses are before him, are entitled to more weight in the Appellate Court than where such findings are made in a cause where the testimony was taken before a Special Master, yet in either case the Chancellor’s findings should not be disturbed by the Appellate Court unless shown to be clearly erroneous. Farrington v. Harrison, 1928, 95 Fla. 769, 116 So. 497; English v. Smith, Fla.App.1957, 97 So.2d 339. It not appearing that this finding of the Chancellor was clearly erroneous, we decline to disturb the same.
During the pendency of the suit below the parties filed a stipulation quoted in part as follows:
“1. The above named administrator has effected a sale of the real estate involved in this suit for the sum of $18,-000.00.
“2. The said defendant shall execute and deliver to the plaintiff a satisfaction in complete discharge of the mortgage held by the said defendant upon said premises upon payment to said defendant’s attorney, J. Thomas Gurney, in the sum of $9,300.00, which represents the approximate amount of principal and interest due thereon to the first day of September, 1955, together with tlie additional sum of $1,-500.00 representing attorney’s fees to said J. Thomas Gurney by the defendant, W. T. Adams.
“3. Said payments are made without prejudice to the rights of the parties herein and not as settlement thereof in the following particulars:
“(a) The plaintiff herein shall still be entitled to receive from the defendant any amount which the court may find to be due the plaintiff from the defendant on the accounting suit involved herein.
“(b) The payment of the said sum of $1,500.00 for attorney’s fees does not constitute aq admission of any liability on account thereof on the part of the plaintiff, liability therefor being contested by the plaintiff. And the plaintiff shall be entitled to judgment against defendant for the difference between the amount, if any, for which the court may find the plaintiff liable to the defendant.”
The Chancellor awarded defendant the sum of One Thousand Five Hundred and 00/100 ($1,500.00) Dollars as attorney’s fees for foreclosing defendant’s mortgage, based on his construction of the above quoted stipulation as an agreemnt that this sum should be paid by plaintiff to defendant as attorney’s fees upon foreclosure being decreed. The Chancellor was correct in finding that defendant is entitled to be awarded reasonable attorney’s fees for the services of his attorneys in foreclosing his mortgage against the Floyd Brooks Property, since the mortgage contains a provision for the payment of such fees, but we agree with appellant’s contention that the stipulation should not be construed as determinative of the amount that should be awarded. On remand the amount to be awarded as attorney’s fees for the mortgage foreclosure should be determined on the basis of evidence to be adduced by the parties, without regard to the One Thousand Five Hundred *584 and 00/100 ($1,500.00) Dollars figure referred'to in the stipulation.
The final decree is affirmed in part and reversed in part, and the cause is remanded for further proceedings in conformity with this opinion.
ALLEN, C. J., and KANNER, J., concur.