**Lola BURTON, as Administratrix of the Estate of William C. Burton, Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.**

**No. 20753.**

United States Court of Appeals
Fifth Circuit.

July 23, 1964.

Rehearing Denied Sept. 11, 1964.

1. 35 U.S.C. § 285 provides that "The court in exceptional cases may award reasonable attorney fees to the prevailing party."

Charles E. Davis, Anthony W. Cunningham, Fishback, Davis, Dominick & Troutman, Orlando, Fla., for appellant.

William McHardy Berson, James O. Driscoll, Berson, Barnes & Inman, Orlando, Fla., for appellee.

Before TUTTLE, Chief Judge, and POPE* and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This case presents for review the propriety of the District Judge's granting of Insurer's motion for summary judgment in a suit by the widow of the Assured as administratrix of the Assured's estate to establish the Insurer's liability for failure to defend suits by third parties against the estate. The facts are these.

On July 3, 1958, the named Assured [1] was involved in an automobile accident in Orange County, Florida. The automobile specifically covered by the policy was totally demolished. The Assured was killed and other persons were killed and injured. These other persons, some individually and others through the personal representatives of their estates, subsequently instituted actions in the Florida State Courts. These suits were brought against "Lola J. Burton as administratrix of the estate of William C. Burton, deceased." Through counsel she notified the Insurer of the actions and fully complied with all the related policy conditions requiring transmittal to the Insurer of pleadings, correspondence and the like. But the Insurer refused to come

---

* Of the Ninth Circuit, sitting by designation.

1. William C. Burton.

in and defend. Judgments totaling some $160,000 were entered on March 26, 1962, against "Lola J. Burton as Administratrix of" Assured's estate. The Insurer refused to pay the judgments, and this action in the Federal District Court resulted. The Federal suit was brought by "Lola Burton, administratrix of the estate of William C. Burton, deceased." The complaint plainly asserted a claim for damages totaling $200,000 allegedly arising out of the Insurer's refusal to defend the third-party actions and pay the State Court judgments which resulted.[2] Included in that figure were claims for attorneys' fees in defense of the State Court third-party suits and in prosecution of this Federal Court suit, and for costs and interest. The District Judge, was apparently convinced that it was a case of all or nothing and if the relief prayed for in the complaint could not now be granted, there was no alternative but to grant the Insurer's motion for summary judgment. He therefore entered judgment for the Insurer denying recovery on all claims except the one for damage to the automobile. This was done on the ground that the widow, "Lola Burton, administratrix of the estate of William C. Burton, deceased," although sued as such was not the duly appointed and legally qualified administratrix of the Assured's estate at the time the State Court third-party suits were instituted and when the judgments in those suits were entered.

The unsuccessful complainant appeals, asserting two things primarily as a basis for reversal. The first is that her subsequent valid appointment as administratrix on December 20, 1962, relates back to validate the judgments entered March 26, 1962, in the State Court third-party suits against her in her representative capacity.[3] The second is that the effect of the District Judge's ruling is to sustain an impermissible collateral attack on the judgments in the third-party suits.[4]

■■ In view of our disposition of the case we need not now decide these questions. The District Judge apparently thought that the pleadings limited the scope of available relief, and if that formally sought was not allowable none could be granted. This is not the law. As we have many times said, except in the case of a default judgment, the Court is bound to grant whatever relief the facts show is necessary or appropriate. F.R.Civ.P. 54(c); Smoot v. State Farm Mut. Auto. Ins. Co., 5 Cir., 1962, 299 F.2d 525; Arthur H. Richland Co. v. Harper, 5 Cir., 1962, 302 F.2d 324; Brotherhood of Railway Trainmen v. Central of Georgia Ry. Co., 5 Cir., 1962, 305 F.2d 605; Shull v. Pilot Life Ins. Co., 5 Cir., 1963, 313 F.2d 445. To grant summary judgment dismissing the whole main case could be sustained, not by showing that the relief prayed for was not available, but rather that there was no genuine issue of fact on which *any* kind or type of relief, complete, final, contingent or interim, could be granted.

The case was decided below and argued here as though this was a suit on the State Court judgments. On that ap-

---

2. The complaint also asserted a claim for damage to the car. This claim is not involved here because the Insurer's motion for summary judgment as to it was denied.

3. She cites and relies on numerous cases from Florida and other courts. E.g., Griffin v. Workman, Fla., 1954, 73 So.2d 844; Brooks v. Adams, Fla.Ct.App., 1959, 115 So.2d 578; Campbell v. Owen, Fla. App., 1962, 132 So.2d 212; Behnke v. Geib, D.Md., 1959, 169 F.Supp. 647; Rohn v. Rohn, Ill.App., 1900, 98 Ill.App. 509; Doyle v. New York O. & W. R. R. Co., N.Y.App.Div., 1901, 66 App.Div. 398,

72 N.Y.Supp. 936; McGlothan v. Pennsylvania Ry. Co., E.D.Pa., 1947, 74 F.Supp. 808; Pflugh v. United States, W.D.Pa., 1954, 124 F.Supp. 607.

4. In this connection she urges as controlling Bemis v. Loftin, 1937, 127 Fla. 515, 173 So. 683; Horn v. City of Miami Beach, 1940, 142 Fla. 178, 194 So. 620; Fisher v. Guidy, 1932, 106 Fla. 94, 142 So. 818; Fiehe v. R. E. Householder Co., 1929, 98 Fla. 627, 125 So. 2; Seaboard All-Florida Ry. Co. v. Leavitt, 1932, 105 Fla. 600, 141 So. 886; DeMarigny v. DeMarigny, Fla., 1949, 43 So.2d 442.

proach the arguments assumed that the crucial thing at stake was the validity of these State Court judgments. The case is a long way from that point. The important thing at this stage is the nature and scope of the Insurer's duty to defend.

■ The policy contained the traditional defense coverage.[5] As we have said before, the obligation of the Company under this standard provision [6] is distinct and separate. American Fidelity & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., 5 Cir., 1960, 280 F.2d 453; National Surety Corp. v. Wells, 5 Cir., 1961, 287 F.2d 102.[7] As we indicated in the American Fidelity & Casualty Company case, it is distinct and separate "in the sense that the duty to defend does not depend upon the payment to a damage claimant or the rendition of a judgment declaring the assured's legal obligation to pay." 280 F.2d 453, at 458. When rightly considered and construed, "[t]he effect of the policy is that the insurer undertakes to defend claims of the type for which it would have to make payment." Ibid.

■ On that approach what is the test for determining whether the claim is "of the type for which [the Insurer] would have to make payment"? Does the duty to defend depend on the facts ultimately established in the damage suit? Or does it ordinarily depend on what the third party claimant contends?

For us the moving hand of Florida makes the Erie choice here simple and inescapable. Aligning Florida with the majority a late, if not the latest, writing

Court, Ford Motor Co. v. Mathis, 5 Cir., 1963, 322 F.2d 267, 269, spells it out plainly.

"The rule seems established everywhere that a public liability carrier's duty to defend the insured in an action brought against him is to be determined from the allegations of the complaint, declaration, or other statement of the cause of action, filed in such action against the insured. See New Amsterdam Casualty Company v. Knowles, Fla.1957, 95 So.2d 413, and the annotation in 50 A.L.R.2d 465, page 504." Bennett v. Fidelity & Casualty Co., Fla.Ct. App.1961, 132 So.2d 788.

See the comprehensive discussion in 7A Appleman, Insurance Law and Practice § 4682 (1962); and the full treatment of the subject by Judge Pope in The Travelers Indemnity Co. v. State Farm Mutual Auto. Ins. Co., 9 Cir., 1964, 330 F.2d 250.

The comment in III Risjord & Austin, Automobile Liability Insurance Cases, case 3112,[8] disagreeing with a decision which in effect determined the duty to defend on what was finally ascertained to be the true facts after the defense was all over, puts it well:

"If the petition stated a cause of action against [the Assured], we think that the insurer was obligated to defend [him], whatever the true facts may have been."

Did the complaint state a cause of action against the Assured? If so, what is the remedy for the Company's breach

---

5. Under Part I of the insuring agreement, the Insurer undertook
   "(2) As respects the insurance afforded under coverages A and B and in *addition* to the applicable limits of liability:
   "(a) to defend any suit against the insured alleging such bodily injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient." (emphasis added.)

6. See I Risjord & Austin, Insurance Cases, Standard Provisions 1947 Basic Auto Policy, provision II(a), at 3 (1957).

7. Cf. United Services Auto. Ass'n v. Russom, 5 Cir., 1957, 241 F.2d 296, 301 (breach by Company of "unconditional contractual obligation to defend" relieves assured of compliance with No-Action clause).

8. Heyden Newport Chemical Corp. v. Southern General Ins. Co., Tex.Civ.App., 1964, no writ hist., 376 S.W.2d 821.

322

of its "absolute duty"? National Surety Corp. v. Wells, 5 Cir., 1961, 287 F.2d 102, 104.

Under the policy, the Company undertook

> "(1) To pay all damages which the insured shall become legally obligated to pay because" of (A) personal injuries (death) and (B) property damage "caused by accident arising out of ownership, maintenance or use, * * * of the automobile."

There is no question about the State Court suits being against the "insured." The policy definitions state "under coverages A [personal injury], B [property damage] * * * the unqualified word 'insured' includes (1) the named insured * * *."[9] William C. Burton, husband of Appellant here, was the named insured. He was the owner and driver of the "private passenger automobile * * described in the [policy] declarations," and this was the automobile involved in the accident which resulted in the State Court suits.

More important, the broad definition of "Insured," note 9, supra, extends coverage for personal injury and property damage claims to "(4) * * any person or organization legally responsible for the use thereof by an *insured* as defined under the three subsections above." When this is read with the balance of the policy, and particularly the provisions respecting notice of an accident or likely claim,[10] it is obvious that the policy covers, and was clearly intended to cover (1) the named Assured and, in the event of his death (2) his estate or personal representatives against whom claims surviving under applicable law may be collected or recovered.

These State Court third-party suits on their face showed that three things were presented: (1) the negligent operation of the described insured automobile, (2) negligent operation thereof by the named Assured causing the damages sought, and (3) the death of the named Assured and the asserted existence of his estate.

Thus the third-party suits charged as plainly as words can a claim for which the Assured would be liable if proved. And, of course, the Insurer knew of those suits. It is uncontradicted on this record that the Insurer received copies of every pleading, motion or other document filed in each of the State Court suits. It is also uncontradicted that the widow complied with all policy conditions relating to notice, cooperation with the Insurer and the like.

It is difficult to comprehend the position of the Insurer. With notice of the accident and the pendency of suits which on the face of the complaints charged a case for liability of the Assured, the Insurer stood mute. It refused to defend, or presumably to budge or even so much as speak. Whether this was the reason, or whether counsel now hard pressed to rationalize the strange result so far reached have simply advanced it as the best way out,[11] the Insurer's justification seems to be this. The suits purported to be brought

---

9. "*Insured*—under coverages A, B, C and M, the unqualified word 'insured' includes (1) the named insured, and also includes (2) his relatives, (3) any other person while using the automobile, provided the actual use of the automobile is with the permission of the named insured, and (4) under coverages A and B any person or organization legally responsible for the use thereof by an insured as defined under the three subsections above."

10. "1. *Notice of Accident, Occurrence or Loss.* In the event of an accident, occurrence or loss, written notice shall be giv-

en by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured, and also reasonably obtainable information respecting the time, place, circumstances of the accident or occurrence, names and addresses of injured persons and available witnesses. * * *"

11. The record indicates strongly that the Insurer learned of this asserted incapacity of Mrs. Burton late in the Federal Court discovery process.

against the administratrix of the estate, but the Insurer knew better since no valid appointment had ever been made. Moving at this point to a mighty (and mighty quick) climax, the Insurer's argument then proceeds, therefore it is no suit at all because it is brought against a party who does not exist.

■■ While this is a pretty and beguiling theory, it is in essence the tired, weary and universally rejected notion that the duty to defend extends only to meritorious suits. But at this late date, it should now be clear that the duty of defense has nothing at all to do with whether the suits are intrinsically meritorious or not. American Fidelity & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., 5 Cir., 1960, 280 F.2d 453, 458. Indeed, if suits are brought against the wrong party or in the wrong court, or if necessary parties are missing, it is to Insurer's advantage to come in and defend knowing all the while that liability cannot be maintained in that suit and hoping against hope that the statute of limitations will run or other impedients will arise before a proper suit is instituted. A pleading that is demurrable (under the old concepts) or one subject to a motion to dismiss for failure to state a claim, F.R. Civ.P. 12(b), if it otherwise describes an occurrence within the coverage imposes on the Insurer at least the duty to supply the defense of filing the demurrer or motion. And, knowledge by the Insurer that the wrong party has been sued is not different from knowledge that the liability facts are different than alleged in the third-party suits. Yet clearly in the latter instance the duty to defend is positive. Indeed, the duty to defend encompasses the duty of honorably bringing forward whatever defense will exonerate the Assured.

■ Since the asserted filing of the third-party suits against the wrong (or nonexistent) party goes only to the merits and not the duty to defend, the Insurer may not drag this in through the back door by claiming it got no notice. Of course it had notice. It cannot in fact deny this. But by metaphysical dialectic it says that what its files revealed it did not in law know because the party sending the materials, i. e., the notice, did not exist. But this is confusing duty to defend with notice of claim, and on that the record is all one way.

■ The upshot is that there is here a clear case of breach of the Company's duty to defend.[12] But to say that there was such a breach is a long way from declaring that this necessarily means that the Insurer is now liable for the State Court judgments or that such judgments are even valid.

■ The duty to defend is not the duty to pay, although a consequence of a failure to defend is often an obligation to pay. But that depends on there being valid judgments against the assured. Perhaps this is just a way of saying that the duty to defend is not only distinct and separate, but it is continuous until satisfied. The situation here, therefore, is one in which this continuing duty to defend takes on a different form. Failure to defend initially has resulted in outstanding judgments. So long as these are still outstanding, it is impossible to go back of them to assert nonliability. But if, under applicable Florida law, these judgments are not valid, then the duty to defend now comprehends the obligation of taking all available steps to set aside such judgments or otherwise have them declared to be of no legal effect against the estate of the deceased Assured or the validly appointed administratrix.

12. This of course assumes that the policy was in full force and effect when the accident occurred. On the argument the Insurer stressed that the trial court's disposition made it unnecessary to pass on a separate independent defense that the coverage of the policy terminated prior to the accident. By our holding here, we do not foreclose to the Insurer the full opportunity to assert and establish that defense. We intimate nothing as to the merits thereof as this is a matter for the District Court initially.

■ It was at this point that the Judge fell—indeed may have been pulled—into error from the misconception by all parties of the nature of this suit at this stage. It is not for the Federal Court in this case to determine whether the State Court judgments are valid, enforceable or not.[13] Nor was it open for the Federal Court in this suit to determine whether some judicial mechanism is now available in the Florida Courts to test the judgments.

■ The predicament of the Insurer may be summed up in this way: either pay the judgments [14] or get them judicially invalidated or set aside. The predicament is its own, flowing as it did from the bold, and legally impermissible, course of ignoring—as though it did not even exist—the State Court suits which presented matters within the coverage. Its present duty to take action to obliterate the State Court judgments is in no way lessened by the fact that so far the judgments have not been paid by the Estate. Where defense has been erroneously denied, the judgment need not first be paid to permit direct recovery or some other suitable relief from the Insurer. Although we could see a cloud of uncertainty in 1957, Dotschay v. National Mut. Ins. Co., 5 Cir., 1957, 246 F.2d 221, the recent decisions in National Mut. Ins. Co. v. Dotschay, Fla.D.Ct.App., 1961, 134 So. 2d 248; American Fire & Cas. Co. v. Davis, Fla.D.Ct.App., 1962, 146 So.2d 615, make the Erie horizon clear for us. By them Florida adopts the almost universal principle that the Assured need not sacrifice his credit, his substance, his assets by first paying the judgments as a condition precedent to suit against his defaulting Insurer. Smoot v. State Farm Mut. Auto. Ins. Co., 5 Cir., 1962, 299 F.2d 525, 529.

The record therefore establishes as a matter of law that the Insurer had the duty to act. It did not. It now has a duty to act, and since it declines to do so, it is essential that a suitable remedy be fashioned by the Federal Court to secure compliance.

■ What seems to have troubled the District Judge, and presumably the Insurer, was a feeling that some kind of order had to be entered which disposed of the whole case now, once and for all. But the Federal Court is not so rigidly bound. Relief to be granted depends not on the prayer, but on what the facts—either found by a trier or established as a matter of law—reasonably requires, F.R.Civ.P. 54(c). And there is like flexibility in the operative terms of any decree or judgment. Thus, where things depend on the outcome of litigation elsewhere, or future developments as to controlling substantive or procedural law, the Federal Court has the power—and the duty where appropriate—to enter a conditional order or decree. Smoot v. State Farm Mut. Auto. Ins. Co., 5 Cir., 1962, 299 F.2d 525; Travelers Ins. Co. v. Busy Elec. Co., 5 Cir., 1961, 294 F.2d 139, at 145; Sax v. Sax, 5 Cir., 1961, 294 F.2d 133, 139; Dotschay v. National Mut. Ins. Co., 5 Cir., 1957, 246 F.2d 221. Thus, the Court by taking full advantage of the elasticity of declaratory orders, 28 U.S.C.A. § 2201, may mold a decree

---

13. This is not a suit, either direct or by way of garnishment, by the judgment creditors against the Insurer.

14. It is too early to even intimate the dollar limits—the full amount of the judgments? Or up to the face amount ($50.-000/$100,000) of the policy? This may be affected by the Florida standard as to the Insurer's liability for amounts in excess of the policy limits for failure to settle, or here, defend. In Florida the Insurer is liable for the excess over policy limits for failure to exercise good faith in the defense, handling and settlement of a claim against the Assured. Auto Mut. Indemnity Co. v. Shaw, 1938, 134 Fla. 815, 184 So. 852, 859; American Fire & Cas. Co. v. Davis, Fla.D.Ct.App., 1962, 146 So.2d 615, 617; American Fidelity & Casualty Co. v. Greyhound Corp., 5 Cir., 1956, 232 F.2d 89, 93; Dotschay v. National Mutual Ins. Co., 5 Cir., 1957, 246 F.2d 221, 222; Tully v. Travelers Ins. Co., N.D.Fla., 1954, 118 F.Supp. 568, 569; cf. Canal Ins. Co. v. Sturgis, Fla.D.Ct.App., 1959, 114 So.2d 469, 115 So.2d 774; Fla., 1960, 122 So.2d 313; see 7A Appleman, Insurance § 4712 (1962).

which protects all parties, but which assures compliance by the Insurer with all of its obligations depending on ultimate developments as to these State Court judgments. The order would first declare a duty to defend and a prior breach of that duty. It could then provide that the Insurer pay the judgments (or appropriate part thereof, see note 14, supra) unless by appropriate proceedings it obtains judicial determination which is fully effective to protect the Assured, the Assured's Estate and the Administratrix. Under such an order the Insurer might not ever have to pay out a cent on the judgments. But in so doing (at its expense), it would be supplying the defense—even though belatedly—which it contracted to furnish. On the other hand, to now deny relief outright to the Assured on the supposition (or holding) that the State Court judgments are void, invalid, wholly unenforceable leaves the Assured exposed to substantial perils from which there can be no escape once the Federal Court judgment below becomes final to constitute a *res judicata* bar. For example, the decree below would not bind the judgment creditors, nor would it exonerate the Estate. Proceedings by the judgment creditors might well result in a Florida decision that the judgments are enforceable. But it would then be too late to compel the Insurer to make good on its promise to defend. If, on the other hand, the State Court judgments are as defective as urged, there will be no difficulty in the Insurer, for and on behalf of, and probably in the name of, its Assured having the judgments declared of no effect.

■ These considerations show why on the record as of the time of the order appealed from, the Court below had the duty of retaining the case, not dismissing it outright, for the entry of appropriate orders, conditional, contingent, or otherwise, to make certain that the rights of all—Insurer and Assured—were preserved and enforced.

■ For reasons which are apparent from a consideration of all of these factors, it is plain that we do not, we could not, blueprint the exact nature of the proceedings on remand or the relief to be granted. But to remedy the breach of the unconditional contractual obligation to defend, United Services Auto. Ass'n v. Russom, 5 Cir., 1957, 241 F.2d 296, 301, the District Court must mold and enter an appropriate decree or decrees.[15] Summary judgment on this phase of the case was therefore improper, and we consequently reverse for further and not inconsistent proceedings.[16]

Reversed and remanded.

---

15. Not only should decrees, conditional or final, be molded to meet the exigencies of the case, but as a matter of good judicial administration in the husbanding of limited judicial manpower, extraordinary resourcefulness and adaptation is called for in the disposition of all cases, both civil and criminal. Shenandoah Valley Broadcasting, Inc. v. ASCAP, 1963, 375 U.S. 39, 84 S.Ct. 8, 11 L.Ed.2d 8, opinion modified and rehearing granted in part, 1964, 375 U.S. 994, 84 S.Ct. 627, 11 L.Ed.2d 467, 468 (dissenting opinion); Bartone v. United States, 1963, 375 U.S. 52, 84 S.Ct. 21, 11 L.Ed.2d 11; Benson v. United States, 5 Cir., 1964, 332 F.2d 288; Whitney v. Wainwright, 5 Cir., 1964, 332 F.2d 787; Anderson v. United States, 5 Cir., 1963, 318 F.2d 815; Jue-lich v. United States, 5 Cir., 1963, 316 F.2d 726.

16. One tag end requires definitive disposition by this Court. Unless the policy is held to have been earlier terminated under the defenses not yet passed on, see note 12, supra, the breach of the duty to defend clearly entails an unconditional liability for attorneys' fees and costs of the defense of the State Court suits. 7A Appleman, Insurance §§ 4689, 4691 (1962). Whether under Florida law there might be a further liability for attorneys' fees, etc. for the Federal Court suit to compel compliance with the duty to defend is for initial determination of the trial court.